# EXHIBIT A



ELECTRONICALLY FILED
4/17/2011 12:49 AM
CV-2011-900828.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

## IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

John Arata; Southern Sports Fishing, Inc.; Larry Scott; Robert Ellington; Daniel L. Jemison, Sr.; Donald L. Mizell, Jr.; David Bryan; White Martin; Samuel Mason, Jr.; Zach Meadows; Master Mike, Inc.; J.I.N., L.L.C.; Andy Yarborough; Fish Trap Charters, L.L.C.; Robert Anderson; Thomas J. Ard; Blue Water Yacht Sales and Services, Inc.; Richard Bosarge; Quinn Breland; Clarence L. Bryant; Captain Mike's Deep Sea Fishing, Inc.; Emily Chambliss; Jeff Chambliss; Donald Jerome Christian; Steven Cook; Charles Crawford; Christopher Dean; Edward M. Deupree, III; Cletes DiNero; Gary Downs; Todd Drummond; Daniel P. Eggers; Erica Lynn, Inc.; Peter Fill; Marlin D. Fillers; Michael J. Fillers; David Forwood; Stephen C. Foust; Chandelyn Gates; Shane Greene; Steve Harrington; Donnie S. Harris; Paul Hightower; Bobby Huff; Dana James; Laurie Jones; Sarah Koptis; David Krause; Patrick Kraver; Bill Kreamer; Robert Kritzmire; Terry Lilley; Timothy Marine; James B. McDonough, III; Mary W. McLaughlin; Brian McNab; Mike Miller; Morris Marine, LLC; Farrell Morris; Matthew Morris; Thomas Myers; Joseph L. Nash; James Noel; James Nowell; Marcus Oliver; Christopher Pfeiffer; Tommy Price; Lynn Pridgen; Rob Reese; Jake Richards; Michael Salley; Barry Scott; Chris Shutt; Paul D. Smith; Thomas H. Smith; Malissa Sommerville; Southland, L.L.C.; Lyle Stephens; Allen Still; David A. Stiller; Jon Swenson; The Morris Agency, LLC; Trawler Becky Lyn, Inc.; Trawler Lady Catherine, Inc.; Trawler Little Brothers, Inc.; Hans Van Aller IV; Matthew B. Walker, Jr.; Peter Wall; Bryan Watts, Jr.; Billy J. Wilkerson, Jr.; Tessa Wilkerson; Wonderland Express, Inc.; Barry Wyatt; and Yarings of Texas, Inc.,

        Plaintiffs,

v.

BP America Production Company; Parsons Corporation; Danos & Curole Staffing, L.L.C.; Jason Ziglar; Dennis Berg; Danny Black; Michael Allen; Michael English; Brandy Buxton;

**CIVIL ACTION NO.:**

CV-_____

1

Justin Nash; Ed Thompson; Joseph Lobo; Phil Payne; Devon Doe; Michael Epps; Trudy Roe; Jeff Johnson; Darryl Gonzales; Henry de La Garza; and Fictitious Defendants 1-100, who are those individuals, general partnerships, limited partnerships, corporations, or other legal entities that made false, misleading, or fraudulent representations to the Plaintiffs that (a) VOO participants would be paid for standby time; (b) VOO participants would be fully reimbursed for damage to their vessels that occurred while the vessels were in the VOO Program; (c) VOO participants would be reimbursed for costs and expenses incurred as a result of the VOO program; (d) VOO participants' vessels would be decontaminated at BP's expense at the conclusion of the program; and (e) the income that VOO participants received through the VOO Program would not offset the claims that VOO participants had against BP as a result of the *Deepwater Horizon* oil spill and/or those individuals, general partnerships, limited partnerships, corporations, or other legal entities that concealed from the Plaintiffs that (a) VOO participants would not be paid for standby time; (b) VOO participants would not be fully reimbursed for damage to their vessels that occurred while the vessel was in the VOO Program; (c) VOO participants would not be reimbursed for costs and expenses incurred as a result of the VOO program; (d) VOO participants' vessels would not be decontaminated at BP's expense at the conclusion of the program; and (e) the income that VOO participants received through the VOO Program would offset the claims that VOO participants had against BP as a result of the *Deepwater Horizon* oil spill,

                    Defendants.

2

## COMPLAINT

John Arata, Southern Sports Fishing, Inc., Larry Scott, Robert Ellington, Daniel L. Jemison, Sr., Donald L. Mizell, Jr., David Bryan, White Martin, Samuel Mason, Jr., Zach Meadows, Master Mike, Inc., J.I.N., L.L.C., Andy Yarborough, Fish Trap Charters, L.L.C., Robert Anderson, Thomas J. Ard, Blue Water Yacht Sales and Services, Inc., Richard Bosarge, Quinn Breland, Clarence L. Bryant, Captain Mike's Deep Sea Fishing, Inc., Emily Chambliss, Jeff Chambliss, Donald Jerome Christian, Steven Cook, Charles Crawford, Christopher Dean, Edward M. Deupree, III, Cletes DiNero, Gary Downs, Todd Drummond, Daniel P. Eggers, Erica Lynn, Inc., Peter Fill, Marlin D. Fillers, Michael J. Fillers, David Forwood, Stephen C. Foust, Chandelyn Gates, Shane Greene, Steve Harrington, Donnie S. Harris, Paul Hightower, Bobby Huff, Dana James, Laurie Jones, Sarah Koptis, David Krause, Patrick Kraver, Bill Kreamer, Robert Kirtzmire, Terry Lilley, Timothy Marine, James B. McDonough, III, Mary W. McLaughlin, Brian McNab, Mike Miller, Morris Marine, LLC, Farrell Morris, Matthew Morris, Thomas Myers, Joseph L. Nash, James Noel, James Nowell, Marcus Oliver, Christopher Pfeiffer, Tommy Price, Lynn Pridgen, Rob Reese, Jake Richards, Michael Salley, Barry Scott, Chris Shutt, Paul D. Smith, Thomas H. Smith, Malissa Sommerville, Southland, L.L.C., Lyle Stephens, Allen Still, David A. Stiller, Jon Swenson, The Morris Agency, LLC, Trawler Becky Lyn, Inc., Trawler Lady Catherine, Inc., Trawler Little Brothers, Inc., Hans Van Aller IV, Matthew B. Walker, Jr., Peter Wall, Bryan Watts, Jr., Billy J. Wilkerson, Jr., Tessa Wilkerson, Wonderland Express, Inc., Barry Wyatt, Yarings of Texas, Inc., file their Complaint against Defendants BP America Production Company, Parsons Corporation, Danos & Curole Staffing, L.L.C., Jason Ziglar, Dennis Berg, Danny Black, Michael Allen,

3

Michael English, Justin Nash, Ed Thompson, Joseph Lobo, Brandy Buxton, Phil Payne, Devon Doe, Michael Epps, Trudy Roe, Jeff Johnson, Darryl Gonzales, Henry de La Garza and Fictitious Defendants 1-100 as follows:

## PARTIES

### *The Plaintiffs*

1.      The Plaintiffs all participated in BP America Production Company's Vessels of Opportunity Program.  Each of the Plaintiffs entered into a Master Vessel Charter Agreement with BP America Production Company.  The Plaintiffs consist of the following persons and entities:

a.      John Arata, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

b.      Southern Sports Fishing, Inc., which is a Mississippi corporation with its principal place of business in Mississippi.

c.      Larry Scott, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

d.      Robert Ellington, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

e.      Daniel L. Jemison, Sr., who is a resident citizen of Mobile County, Alabama and are over the age of 19.

f.      Donald L. Mizell, Jr., who is a resident citizen of Mobile County, Alabama and is over the age of 19.

g.      David Bryan, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

4

h.     White Martin, who is a resident citizen of Mobile, Alabama and is over the age of 19.

i.     Samuel Mason, Jr., who is a resident citizen of Mobile County, Alabama and is over the age of 19.

j.     Zach Meadows, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

k.     Master Mike, Inc., which is an Alabama corporation with its principal place of in Alabama.

l.     J.I.N., L.L.C., which is an Alabama limited liability company.  All of J.I.N., L.L.C.'s members are resident citizens of Alabama.

m.     Andy Yarborough, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

n.     Fish Trap Charters, L.L.C., which is an Alabama limited liability company.  All of Fish Trap Charters, L.L.C.'s members are resident citizens of Alabama.

o.     Robert Anderson, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

p.     Thomas J. Ard, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

q.     Blue Water Yacht Sales and Services, Inc., which is an Alabama corporation with its principal place of business in Mobile County, Alabama.

r.     Richard Bosarge, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

5

s.      Quinn Breland, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

t.      Clarence L. Bryant, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

u.      Captain Mike's Deep Sea Fishing, Inc., which is an Alabama corporation with its principal place of business in Mobile County, Alabama.

v.      Emily B. Chambliss, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

w.      Jeffrey Chambliss, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

x.      Donald Jerome Christian, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

y.      Steven Cook, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

z.      Charles Crawford, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

aa.     Christopher Dean, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

bb.     Edward M. Deupree, III, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

cc.     Cletes DiNero, who is a resident citizen of Jefferson Parish, Louisiana and is over the age of 19.

6

dd.     Gary Downs, who is a resident citizen of Baldwin County, Alabama and over the age of 19.

ee.     Todd Drummond, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

ff.     Daniel P. Eggers, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

gg.     Erica Lynn, Inc., which is an Alabama corporation with its principal place of business in Baldwin County, Alabama.

hh.     Peter Fill, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

ii.     Marlin D. Fillers, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

jj.     Michael J. Fillers, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

kk.     David Forwood, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

ll.     Stephen C. Foust, who is a resident citizen of Escambia County, Florida and is over the age of 19.

mm.     Chandelyn Gates, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

nn.     Shane Greene, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

oo.     Steve Harrington, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

pp.     Donnie S. Harris, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

qq.     Paul Hightower, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

rr.     Bobby Huff, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

ss.     Dana James, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

tt.     Laurie Jones, who is a resident citizen of Lee County, Alabama and is over the age of 19.

uu.     Sarah Koptis, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

vv.     David Krause, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

ww.     Patrick Kraver, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

xx.     Bill Kreamer, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

yy.     Robert Kritzmire, who is a resident citizen of Escambia County, Florida and is over the age of 19.

8

zz.   Terry Lilley, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

aaa.   Timothy Marine, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

bbb.   James B. McDonough, III, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

ccc.   Mary W. McLaughlin, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

ddd.   Brian McNab, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

eee.   Mike Miller, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

fff.   Morris Marine, LLC, which is an Alabama limited liability company. All of Morris Marine, LLC's members are resident citizens of Alabama.

ggg.   Farrell Morris, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

hhh.   Matthew Morris, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

iii.   Thomas Myers, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

jjj.   Joseph L. Nash, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

kkk.   James Noel, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

lll.   James Nowell, who is a resident citizen of Baldwin County Alabama and is over the age of 19.

mmm. Marcus Oliver, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

nnn.   Christopher Pfeiffer, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

ooo.   Tommy Price, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

ppp.   Lynn Pridgen, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

qqq.   Rob Reese, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

rrr.   Jake Richards, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

sss.   Michael Salley, who is a resident citizen of Pensacola, Florida and is over the age of 19.

ttt.   Barry Scott, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

uuu.   Chris Shutt, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

10

vvv.   Paul D. Smith, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

www. Thomas H. Smith, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

xxx.   Malissa Sommerville, who is a resident citizen of Gulfport, Mississippi and is over the age of 19.

yyy.   Southland, LLC, which is an Alabama limited liability company.  All of Southland, L.L.C.'s members are resident citizens of Alabama.

zzz.   Lyle Stephens, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

aaaa. Allen Still, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

bbbb. David A. Stiller, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

cccc. Jon Swenson, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

dddd. The Morris Agency, LLC, which is an Alabama limited liability company.  All of The Morris Agency, LLC's members are resident citizens of Alabama.

eeee. Trawler Becky Lyn, Inc., which is an Alabama corporation with its principal place of business in Alabama.

ffff.   Trawler Lady Catherine, Inc., which is a Delaware corporation with its principal place of business in Alabama.

11

gggg. Trawler Little Brothers, Inc., which is a Delaware corporation with its principal place of business in Alabama.

hhhh. Hans Van Aller IV, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

iiii.    Matthew B. Walker, Jr. who is a resident citizen of Mobile County, Alabama and is over the age of 19.

jjjj.    Peter Wall, who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

kkkk. Bryan Watts, Jr., who is a resident citizen of Baldwin County, Alabama and is over the age of 19.

llll.    Billy J. Wilkerson, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

mmmm.    Tessa Wilkerson, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

nnnn. Wonderland Express, Inc., which is an Alabama corporation with its principal place of business in Alabama.

oooo. Barry Wyatt, who is a resident citizen of Mobile County, Alabama and is over the age of 19.

pppp. Yarings of Texas, Inc., which is a Texas corporation with its principal place of business in Texas.

### ***The Corporate Defendants***

2.      BP America Production Company is a Delaware corporation with its principal place of business in the State of Texas.  BP America Production Company was a party to each of the Master Vessel Charter Agreements signed by the Plaintiffs.

3.      Parsons Corporation is a Delaware corporation with its principal place of business in California.  BP America Production Company contracted with Parsons Corporation to operate and manage its Vessels of Opportunity Program.

4.      Danos & Curole Staffing, L.L.C is a Louisiana limited liability company. BP America Production Company contracted with Danos & Curole Staffing, LLC to provide accounting and payment services for the Vessels of Opportunity Program.

### ***The Individual Defendants***

5.      Jason Ziglar is a resident citizen of Mobile County, Alabama.  At all times relevant to this complaint, Jason Ziglar was employed by and/or an agent of BP America Production Company.  Jason Ziglar managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity Program.  At all times relevant to this complaint, Jason Ziglar was based in and operated out of Mobile County, Alabama.

6.      Dennis Berg is a resident citizen of Mobile County, Alabama.  At all times relevant to this complaint, Dennis Berg was employed by and/or an agent of Parsons Corporation.  Dennis Berg managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity Program.  At all times relevant to this complaint, Dennis Berg was based in and operated out of Mobile County, Alabama.

13

7.      Danny Black is a resident citizen of Mobile County, Alabama.  At all times relevant to this complaint, Danny Black was employed by and/or an agent of Parsons Corporation.  Danny Black managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity Program.  At all times relevant to this complaint, Danny Black was based in and operated out of Mobile County, Alabama.

8.      Michael Allen is a resident citizen of Mobile County, Alabama.  At all times relevant to this complaint, Michael Allen was employed by and/or an agent of Parsons Corporation.  Michael Allen managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity Program.  At all times relevant to this complaint, Michael Allen was based in and operated out of Mobile County, Alabama.

9.      Michael English is a resident citizen of Mobile County, Alabama.  At all times relevant to this complaint, Michael English was employed by and/or an agent of Parsons Corporation.  Michael English managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity Program.  At all times relevant to this complaint, Michael English was based in and operated out of Mobile County, Alabama.

10.     Brandy Buxton is a resident citizen of Mobile County, Alabama.  At all times relevant to this complaint, Brandy Buxton was employed by and/or an agent of BP.  Brandy Buxton participated in accounting and payment services for the Vessels of Opportunity Program.  At all times relevant to this complaint, Brandy Buxton was based in and operated out of Mobile County, Alabama.

11.     Justin Nash is a resident citizen of Anchorage, Alaska.  At all times relevant to this complaint, Justin Nash was employed by and/or an agent of BP America

14

Production Company.  Justin Nash managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity Program.  At all times relevant to this complaint, Justin Nash was based in and operated out of Mobile County, Alabama.

13.    Joseph Lobo is a resident citizen of Texas.  At all times relevant to this complaint, Joseph Lobo was employed by and/or an agent of BP America Production.  Joseph Lobo managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity Program.  At all times relevant to this complaint, Joseph Lobo was based in and operated out of Mobile County, Alabama.

12.    Ed Thompson is a resident citizen of Alaska.  At all times relevant to this complaint, Ed Thompson was employed by and/or an agent of Parsons Corporation.  Ed Thompson managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity Program.  At all times relevant to this complaint, Ed Thompson was based in and operated out of Mobile County, Alabama.

14.    Phil Payne is a resident citizen of Mississippi.  At all times relevant to this complaint, Phil Payne was employed by and/or an agent of Parsons Corporation.  Phil Payne managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity Program.  At all times relevant to this complaint, Phil Payne was based in and operated out of Mobile County, Alabama.

15.    Devon Doe's resident citizenship is unknown.  At all times relevant to this complaint, Devon Doe was employed by and/or an agent of Parsons Corporation.  Devon Doe managed, operated and solicited vessels for BP America Production

15

Company's Vessels of Opportunity Program.  At all times relevant to this complaint, Devon Doe was based in and operated out of Mobile County, Alabama.

16.    Michael Epps' resident citizenship is unknown.  At all times relevant to this complaint, Michael Epps was employed by and/or an agent of Parsons Corporation. Michael Epps managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity Program.  At all times relevant to this complaint, Michael Epps was based in and operated out of Mobile County, Alabama.

17.    Trudy Roe's resident citizenship is unknown.  At all times relevant to this complaint, Trudy Roe was employed by and/or an agent of Danos & Curole Staffing, L.L.C.  Trudy Roe participated in accounting and payment services for the Vessels of Opportunity Program.  At all times relevant to this complaint, Trudy Roe was based in and operated out of Mobile County, Alabama.

18.    Jeff Johnson is a resident citizen of Anchorage, Alaska.  At all times relevant to this complaint, Jeff Johnson was employed by and/or an agent of BP America Production Company.  Jeff Johnson managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity Program.  At all times relevant to this complaint, Jeff Johnson was based in and operated out of Mobile County, Alabama

19.    Darryl Gonzales' resident citizenship is unknown.  At all times relevant to this complaint, Darryl Gonzales was employed by and/or an agent of BP America Production Company.  Darryl Gonzales managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity Program.  At all times relevant

16

to this complaint, Darryl Gonzales was based in and operated out of Mobile County, Alabama

20.     Henry de La Garza is a resident citizenship of Texas.  At all times relevant to this complaint, Henry de La Garza was employed by and/or an agent of BP America Production Company.  Henry de La Garza managed, operated and solicited vessels for BP America Production Company's Vessels of Opportunity Program.   At all times relevant to this complaint, Henry de La Garza was based in and operated out of Mobile County, Alabama

### *The Fictitious Defendants*

21.     Fictitious Defendants 1-50 are those individuals, general partnerships, limited partnerships, corporations or other legal entities that made false, misleading or fraudulent representations to the Plaintiffs that (a) VOO participants would be paid for standby time; (b) VOO participants would be fully reimbursed for damage to their vessels that occurred while the vessel was in the VOO Program; (c) VOO participants would be reimbursed for costs and expenses incurred as a result of the VOO program; (d) VOO participants' vessels would be decontaminated at BP's expense at the conclusion of the program; and (e) the income that VOO participants received through the VOO Program would not offset the claims that VOO participants had against BP as a result of the *Deepwater Horizon* oil spill.

22.     Fictitious Defendants 51-100 are those individuals, general partnerships, limited partnerships, corporations or other legal entities that concealed from the Plaintiffs that (a) VOO participants would not be paid for standby time; (b) VOO participants would not be fully reimbursed for damage to their vessels that occurred

while the vessel was in the VOO Program; (c) VOO participants would not be reimbursed for costs and expenses incurred as a result of the VOO program; (d) VOO participants' vessels would not be decontaminated at BP's expense at the conclusion of the program; and (e) the income that VOO participants received through the VOO Program would offset the claims that VOO participants had against BP as a result of the *Deepwater Horizon* oil spill.

## JURISDICTION AND VENUE

23.     The amount in controversy in this case exceeds $10,000.  Thus, pursuant to § 12-11-30 of the Alabama Code, this matter falls within the exclusive jurisdiction of this Court.

24.     Pursuant to § 6-3-2 of the Alabama Code and Rule 82 of the Alabama Rules of Civil Procedure, venue is proper in this Court with respect to the Individual Defendants because (a) some of the Individual Defendants live in Mobile County, Alabama; (b) most of the acts or omissions complained of by the Plaintiffs occurred in Mobile County, Alabama; and (c) many of the acts on which the Plaintiffs' claims are founded were performed in Mobile County, Alabama.

25.     Pursuant to § 6-3-7 of the Alabama Code, venue is proper in this Court with respect to the Corporate Defendants because (a) a substantial part of the events and/or omissions giving rise to Plaintiffs' claims occurred in Mobile County, Alabama; (b) some or all of the Defendants' principal offices in this state are located in Mobile County, Alabama; (c) many of the Plaintiffs reside in Mobile County, Alabama and/or have their principal office in Mobile County, Alabama; (d) all of the Corporate Defendants were doing business in Mobile County, Alabama when the Plaintiffs' actions

18

accrued and are continuing to do business in Mobile County; (e) the Plaintiffs' claims arise from the same conduct, transaction, occurrence or series of transactions or occurrences; and (f) maintaining a single action to resolve Plaintiffs' claims will serve the ends of judicial economy and efficiency.

## **FACTUAL ALLEGATIONS**

26.     This case arises from uniform Master Vessel Charter Agreements entered into between Plaintiffs and Defendant BP America Production Company ("BP").  The uniform Master Vessel Charter Agreements were entered into as part of BP's Vessels of Opportunity ("VOO") Program.   BP, Parsons Corporation, Danos & Curole and the Individual Defendants have engaged in an illegal and unlawful conspiracy to defraud Plaintiffs and to underpay Plaintiffs for services, equipment, materials, repairs and decontaminations related to the Plaintiffs' vessels' participation in the VOO Program. That conspiracy is described more fully below.

27.     Following the *Deepwater Horizon* oil spill, BP established the VOO Program as part of BP's response to the oil spill.  Publicly, BP claimed that the VOO Program would help clean up the Gulf Coast and would provide money to people affected by the oil spill.   Once implemented, the VOO Program was marred by mismanagement, corruption and broken promises.  As a result, when the VOO Program was concluded, thousands of participants, including Plaintiffs, were left holding the bag for millions of dollars for unpaid services, equipment, materials, repairs and decontaminations.

28.     The VOO Program was organized, implemented, administered, orchestrated and operated through BP's Mobile Operations Center and BP's Mobile

19

Incident Information Center, both of which have been located in Mobile County, Alabama at all times material hereto.

29.     At all times relevant to this Complaint, Individual Defendants Justin Nash, Jason Ziglar, Michael Allen, Michael English and Ed Thompson were based out of Mobile County, Alabama and worked and operated from BP's Mobile Operations Center and BP's Mobile Incident Information Center.  Individual Defendants Justin Nash, Jason Ziglar, Michael Allen, Michael English and Ed Thompson were instrumental in implementing and carrying out BP and the other Corporate Defendants' conspiracy to defraud Plaintiffs, to fraudulently induce Plaintiffs into the program and to underpay the Plaintiffs for services, equipment, materials, repairs and decontaminations related to the Plaintiffs' vessels' participation in the VOO Program.

30.     To implement the VOO Program, BP and the other Defendants needed to mobilize thousands of vessels, captains and crew members in a very short period of time.  However, many of the vessels, captains and crew members that needed to be mobilized, although idled by the *Deepwater Horizon* oil spill, were entitled under applicable law to be reimbursed by BP for all of their lost income resulting from the *Deepwater Horizon* oil spill.  As a result, in order to effectively implement the VOO Program, BP and the other Defendants had to convince vessel owners, captains and crew members that they would receive more money through the VOO Program than if they sat idle at the dock or pursued other employment or income opportunities.

31.     In late April 2010 and continuing through the summer of 2010, BP and the other Defendants launched a campaign to solicit participants for the VOO Program. This campaign consisted of, among other things, town hall and community meetings,

20

television, radio, print and internet advertisements and assorted other meetings, communications and discussions with individuals and small groups.

32.    BP's town hall and community meetings were open to the public and often videotaped.  The town hall and community meetings were BP and the other Defendants' primary means of "getting the word out" about the VOO Program.  The representations and communications made by BP and the other Defendants during these meetings were intended and expected to be communicated to and relied on by persons not present at the town hall and community meetings.

33.    Throughout this campaign, and to encourage vessel owners, captains and crew members to participate in the VOO Program, BP and the other Defendants represented, promised and warranted, among other things, that (a) VOO participants would be paid for standby time; (b) VOO participants would be fully reimbursed for any damage to their vessels that occurred while the vessels were in the VOO Program; (c) VOO participants would be reimbursed for costs and expenses incurred as a result of the VOO program; (d) VOO participants' vessels would be decontaminated at the Defendants' expense at the conclusion of the VOO Program; and (e) the income that VOO participants received through the VOO Program would not be used to offset the lost income claims that VOO participants had against BP as a result of the *Deepwater Horizon* oil spill.  BP and the other Defendants knew that these representations were false when made.  Further, these false representations were part of and in furtherance of BP and the other Defendants' unlawful and illegal conspiracy to defraud Plaintiffs and to underpay Plaintiffs for services, equipment, materials, repairs and decontaminations related to the Plaintiffs' vessels' participation in the VOO Program.

21

34.     In order to gain entry into the program, a vessel owner was required to execute a Master Vessel Charter Agreement.  The Master Vessel Charter Agreement was substantially identical for each participant in the VOO Program.

35.     The Master Vessel Charter Agreement provides that (a) the charter begins when the vessel is activated; (b) after being activated, the vessel must be available and ready to work 24 hours a day, 7 days a week; and (c) the charter does not end until BP sends the vessel owner an "off-hire dispatch notification" and the vessel is decontaminated.

36.     The Master Vessel Charter Agreement also required that BP: (a) reimburse VOO participants for damage to their vessels that occurred while the vessels were in the VOO Program; (b) reimburse VOO participants for costs and expenses incurred as a result of the VOO program; and (c) decontaminate the vessels that participated in the VOO program.

37.     After VOO participants executed the Master Vessel Charter Agreement, BP and the other Defendants continued to represent to VOO participants that they: (a) would be paid for standby time; (b) would be fully reimbursed for any damage to their vessels that occurred while the vessels were in the VOO Program; (c) would be reimbursed for costs and expenses incurred as a result of the VOO program; (d) would have their vessels decontaminated at the conclusion of the VOO Program; and (e) would not have the income that they received through the VOO Program offset against the lost income claims that they had against BP as a result of the *Deepwater Horizon* oil spill.  BP and the other Defendants knew that these representations were false when made.  Further, these false representations were part of and in furtherance of BP and

the other Defendants unlawful and illegal conspiracy to defraud Plaintiffs and to underpay Plaintiffs for services, equipment, materials, repairs and decontaminations related to the Plaintiffs' vessels' participation in the VOO Program.

38.     The invoicing and payment program designed by BP and the other Defendants for the VOO Program was intentionally slow and inefficient.   VOO participants were routinely told that their paper work and invoices were insufficient or had been lost.  At times, it took weeks and months for VOO participants to be paid for services, equipment, materials and repairs.  When payment was finally received, it was difficult, if not impossible, for VOO participants to tell which invoices and services, equipment, materials and repairs the payment applied to.

39.     This deliberately slow and confusing payment methodology was part of and in furtherance of BP and the other Defendants' unlawful and illegal conspiracy to underpay VOO participants.   In particular, BP and the other Defendants used this intentionally slow and deceptive process to prevent VOO participants from discovering that BP and the other Defendants intended to underpay VOO participants.

40.     Beginning in July 2010, BP and the other Defendants decided to phase out the VOO Program.  However, with oil still in the Gulf of Mexico and mounting public pressure on BP, BP and the other Defendants determined that it would be a public relations disaster to send thousands of VOO participants an "off-hire dispatch notification" pursuant to the uniform Master Service Charter Agreements.  Accordingly, as BP and the other Defendants slowly increased the number of VOO participants that were on standby, BP and the other Defendants continued to represent to VOO participants that they were still in the VOO Program and that they would be fully paid for

23

services, equipment, materials, repairs and decontaminations related to the Plaintiffs' vessels' participation in the VOO Program.  These representations were part of and in furtherance of BP and the other Defendants' unlawful and illegal conspiracy to defraud and to underpay VOO participants.

41.    In late July, 2010, Tropical Storm Bonnie came ashore in Louisiana. Tropical Storm Bonnie provided BP and the other Defendants with an opportunity to begin substantially phasing out the VOO Program.  Prior to Tropical Storm Bonnie's landfall, BP and the other Defendants put virtually all participants in the VOO Program on standby and began moving substantial amounts of VOO materials, equipment and assets out of the Gulf Region.  BP and the other Defendants represented, promised and warranted to the press, public and VOO participants that this demobilization was in preparation for Tropical Storm Bonnie, that the VOO Program was not being phased out, and that VOO participants would be back out on the water in no time.  The reality, however, was that BP and the other Defendants did not want to deal with the public relations fallout of telling the VOO participants that the VOO Program was being phased out.

42.    After Tropical Storm Bonnie's landfall, the majority of VOO participants remained on standby and were not called back out on the water, as BP and the other Defendants had represented.  In late August 2010, with the Macondo Well capped, BP began sending official "off-hire dispatch notifications" to VOO participants.  Following notification of being off-hire, Plaintiffs attempted to have their vessels decontaminated, only to be put off for weeks or months by BP and the other Defendants.  Since that time, BP and the other Defendants have refused to pay VOO participants for services,

equipment, materials, repairs and decontaminations related to the Plaintiffs' vessels' participation in the VOO Program.

43.     Since the VOO program ended, BP and the other Defendants have refused to compensate the Plaintiffs for services, equipment, materials, repairs and decontaminations related to the Plaintiffs' vessels' participation in the VOO Program, as required by the Master Vessel Charter Agreements and as represented by BP and the other Defendants.

44.     Both prior to and during the VOO Program, BP and the other Defendants concealed from the Plaintiffs that (a) VOO participants would not be paid for standby time; (b) VOO participants would not be fully reimbursed for damage to their vessels that occurred while the vessel was in the VOO Program; (c) VOO participants would not be reimbursed for costs and expenses incurred as a result of the VOO program; (d) VOO participants' vessels would not be decontaminated at BP's expense at the conclusion of the program; and (e) the income that VOO participants received through the VOO Program would offset the claims VOO participants had against the BP as a result of the *Deepwater Horizon* oil spill.   Further, BP and the other Defendants' concealment of these material facts from the Plaintiffs was part of and in furtherance of BP and the other Defendants' unlawful and illegal conspiracy to defraud Plaintiffs and to underpay Plaintiffs for services, equipment, materials, repairs and decontaminations related to the Plaintiffs' vessels' participation in the VOO Program.

25

### *John Arata*

45.     On or about May 12, 2010, Plaintiff Arata and BP entered into Master Vessel Charter Agreement No. 55467 for a 32 foot boat owned by Plaintiff Arata.  BP agreed to pay Plaintiff Arata $1,500 per day as charter hire for the vessel.

46.     Prior to and after Plaintiff Arata and BP entered into Master Vessel Charter Agreement No. 55467, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Arata, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.  Additional representations made by Defendants to Plaintiff Arata include, but are not limited to, the following:

a.     On or about May 12, 2010, at a community meeting attended by Plaintiff Arata in Mobile County, Alabama, employees and agents of the Corporate Defendants and Fictitious Defendants represented and warranted to Plaintiff Arata that he would be paid for every day his vessel was in the VOO Program;

b.     On or after May 12, 2010, Defendant Danny Black represented and warranted to Plaintiff Arata that he would be paid for every day his vessel was in the VOO Program, regardless of whether the vessel was actually deployed; and

c.     On or after May 12, 2010, Defendant Dennis Berg represented and warranted to Plaintiff Arata that he would be paid for every day his vessel was in the VOO Program, regardless of whether the vessel was actually deployed.

47.     Plaintiff Arata received an off-hire dispatch notification for his vessel some time after August 23, 2010.

48.     Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Arata has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Southern Sports Fishing, Inc.*

49.     On or about May 5, 2010, Plaintiff Southern Sports Fishing, Inc. and BP entered into Master Vessel Charter Agreement No. 55102 for a 127 foot boat owned by Plaintiff Southern Sports Fishing and eleven 16 foot skiffs.  BP agreed to pay Plaintiff Southern Sports Fishing $2,000 per day as charter hire for the 127 foot boat and $1,200 per day as charter hire for the 11 skiffs.

50.     On or about May 5, 2010, Plaintiff Southern Sports Fishing and BP entered into Master Vessel Charter Agreement No. 55129 for a 50 foot boat owned by Plaintiff Southern Sports Fishing.  BP agreed to pay Plaintiff Southern Sports Fishing $2,000 per day as charter hire for the 50 foot boat.

51.     On or about May 10, 2010, Plaintiff Southern Sports Fishing and BP entered into Master Vessel Charter Agreement No. 56281 for (1) a 90 foot boat chartered by Plaintiff Southern Sports Fishing, (2) six 15 foot skiffs chartered by Plaintiff Southern Sports Fishing, (3) a 42 foot boat owned by Plaintiff Southern Sports Fishing and (4) a 30 foot boat owned by Plaintiff Southern Sports Fishing.  BP agreed to pay Plaintiff Southern Sports Fishing $3,000 per day as charter hire for the 90 foot boat,

$1,200 per day as charter hire for the 6 skiffs, $1,500 per day as charter hire for the 42 foot boat, and $1,500 per day as charter hire for the 30 foot boat.

52.    On or about May 15, 2010, Plaintiff Southern Sports Fishing and BP entered into Master Vessel Charter Agreement No. 55983 for a 52.5 foot boat chartered by Plaintiff Southern Sports Fishing.  BP agreed to pay Plaintiff Southern Sports Fishing $2,000 per day as charter hire for the 52.5 foot boat.

53.    On or about May 15, 2010, Plaintiff Southern Sports Fishing and BP entered into Master Vessel Charter Agreement No. 55984 for a 27 foot boat owned by Plaintiff Southern Sports Fishing.  BP agreed to pay Plaintiff Southern Sports Fishing $1,200 per day as charter hire for the 27 foot boat.

54.    On or about May 15, 2010, Plaintiff Southern Sports Fishing and BP entered into Master Vessel Charter Agreement No. 55986 for a 110 foot boat chartered by Plaintiff Southern Sports Fishing.  BP agreed to pay Plaintiff Southern Sports Fishing $2,000 per day as charter hire for the 110 foot boat.

55.    Prior to and after Plaintiff Southern Sports Fishing and BP entered into Master Vessel Charter Agreements Nos. 55102, 55129, 56281, 55983, 55984 and 55986, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Southern Sports Fishing, among other things, that it would be paid for standby time, that it would be fully reimbursed for any damage to his vessels that occurred while the vessel was in the VOO Program, and that any monies received through the VOO Program would not be used to offset any lost income claim that it might otherwise have against BP.  Additional representations

28

made by Defendant to Plaintiff Southern Sports Fishing include, but are not limited to, the following:

a.      In early May 2010, Plaintiff Southern Sports Fishing had numerous telephone calls and conversations with Defendant Justin Nash, who was based out of Mobile County, Alabama.  During these telephone calls and conversations, Justin Nash represented and warranted to Plaintiff Southern Sports Fishing that BP would pay charter hire for any vessels that Plaintiff Southern Sports Fishing could locate for the VOO Program.  In reliance on this representation, Plaintiff Southern Sports Fishing chartered and purchased dozens of boats, none of which were paid charter hire.

b.      On or about May 10, 2010, Plaintiff Southern Sports Fishing had a face to face meeting with Defendant Jason Ziglar at the Convention Center in downtown Mobile, Alabama.  During this meeting, Defendant Jason Ziglar repeatedly represented and warranted to Plaintiff Southern Sports Fishing that vessels in the VOO Program would be paid regardless of whether the vessels were actually deployed.

c.      On or about May 17, 2010, Plaintiff Southern Sports Fishing spoke with Defendant Jason Ziglar and inquired about why Plaintiff Southern Sports Fishing had not yet been paid for, among other things, standby time.  During this conversation, Defendant Jason Ziglar told Plaintiff Southern Sports Fishing not to worry and assured and represented to Plaintiff Southern Sports Fishing that it would be paid for all of its standby time.

56.     Plaintiff Southern Sports Fishing began receiving off-hire dispatch notifications for its vessels in late August 2010.

57.     Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Southern Sports Fishing has not been fully compensated for (a) time its vessels actually spent on the water during the VOO Program; (b) time its vessels spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of its vessels.

### *Larry Scott*

58.     On or about May 10, 2010, Plaintiff Larry Scott and BP entered into Master Vessel Charter Agreement No. 55415 for 2 vessels owned by Plaintiff Larry Scott: (1) a 25 foot vessel for which BP agreed to pay Plaintiff Larry Scott $1,200 per day as charter hire and (2) a 20 foot vessel for which BP agreed to pay Plaintiff Larry Scott $1,200 per day as charter hire for the vessel.

59.     Prior to and after Plaintiff Larry Scott and BP entered into Master Vessel Charter Agreement No. 55415, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Larry Scott, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

60.     Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Larry Scott has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel

spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

61.     In late May 2010, Defendants BP, Parsons Corporation, Michael Allen and Michael English agreed, represented and promised to pay Plaintiff Larry Scott $1,000 per day for the use of his facilities, boat ramp and parking area as a staging and operations location for the VOO program.

62.     Contrary to the representations and promises of the Defendants, Plaintiff Larry Scott was never paid for the use of his facilities, boat ramp and parking area as part of the VOO program.

### ***Robert Ellington***

63.     In mid-May, 2010, Plaintiff Robert Ellington and BP entered into Master Vessel Charter Agreement No. 56249 for a vessel owned by Plaintiff Ellington.  BP agreed to pay Plaintiff Ellington a set amount per day as charter hire for the vessel.

64.     Prior to and after Plaintiff Ellington and BP entered into Master Vessel Charter Agreement No. 56249, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Ellington, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.  Additional representations made by Defendants to Plaintiff Ellington include, but are not limited to, the following:

a.     On or about May 3, 2010, at a community meeting attended by Plaintiff Ellington in Mobile County, Alabama, Defendant Joseph Lobo

31

represented and warranted to Plaintiff Ellington that he would be paid for every day his vessel was in the VOO program.

> b.    At that same community meeting in Mobile County, Alabama, Defendant Joseph Lobo represented and warranted to Plaintiff Ellington that any damages his vessel incurred while in the VOO program would be repaired.

65.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Ellington has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Daniel L. Jemison, Sr.*

66.    On or about May 3, 2010, Plaintiff Daniel L. Jemison, Sr. and BP entered into Master Vessel Charter Agreement No. 50009 for a 17 foot vessel owned by Plaintiff Jemison.  BP agreed to pay Plaintiff Jemison $1,200 per day as charter hire for the vessel.

67.    Prior to and after Plaintiff Jemison and BP entered into Master Vessel Charter Agreement No. 50009, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Jemison, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.  Additional representations made by Defendants to Plaintiff Jemison include, but are not limited to, the following:

a.     On or about May 3, 2010, at a community meeting attended by Plaintiff Jemison in Mobile County, Alabama, employees and agents of the Corporate Defendants and Fictitious Defendants represented and warranted to Plaintiff Jemison that he would be paid for every day his vessel was in the VOO Program; and

b.     On or after May 3, 2010, agents of the Corporate Defendants and Fictitious Defendants represented and warranted to Plaintiff Jemison that any damages his vessel incurred while in the VOO Program would be repaired.

68.     Plaintiff Jemison received an off-hire dispatch notification for his vessel some time after August 27, 2010.

69.     Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Jemison has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs to his vessel.

### *Donald L. Mizell, Jr.*

70.     In May 2010, Plaintiff Mizell and BP entered into Master Vessel Charter Agreement No. 56486 for a 21 foot vessel owned by Plaintiff Mizell.  BP agreed to pay Plaintiff Mizell $1,200 per day as charter hire for the vessel.

71.     Prior to and after Plaintiff Mizell and BP entered into Master Vessel Charter Agreement No. 56486, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Mizell, among other things, that he would be paid for standby time and that he would be fully

33

reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program. Additional representations made by Defendants to Plaintiff Mizell include, but are not limited to, the following:

a. In May 2010, at a community meeting attended by Plaintiff Mizell in Mobile County, Alabama, employees and agents of the Corporate Defendants and Fictitious Defendants represented and warranted to Plaintiff Mizell that he would be paid for every day his vessel was in the VOO Program; and

b. In May 2010, at a community meeting attended by Plaintiff Mizell in Mobile County, Alabama, employees and agents of the Corporate Defendants and Fictitious Defendants represented and warranted to Plaintiff Mizell that his vessel would be repaired as a result of any damages incurred as a result of the VOO Program.

72. Plaintiff Mizell received an off-hire dispatch notification for his vessel some time after August 27, 2010.

73. Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Mizell has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

34

### *David Bryan*

74.     On or about May 12, 2010, Plaintiff David Bryan and BP entered into Master Vessel Charter Agreement No. 55816 for a 48 foot vessel owned by Plaintiff Bryan.  BP agreed to pay Plaintiff Bryan $2,000 per day as charter hire for the vessel.

75.     Prior to and after Plaintiff Bryan and BP entered into Master Vessel Charter Agreement No. 55816, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Bryan, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.  Additional representations made by Defendants to Plaintiff Bryan include, but are not limited to, the following:

> a.     On or about May 12, 2010, at a community meeting attended by Plaintiff Bryan in Mobile County, Alabama, employees and agents of the Corporate Defendants and Fictitious Defendants represented and warranted to Plaintiff Bryan that he would be paid for every day his vessel was in the VOO Program.

76.     Plaintiff Bryan received an off-hire dispatch notification for his vessel some time after August 27, 2010.

77.     Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Bryan has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses

incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### ***White Martin***

78.     On or about May 17, 2010, Plaintiff Martin and BP entered into Master Vessel Charter Agreement No. 58422 for a 24 foot vessel owned by Plaintiff Martin.  BP agreed to pay Plaintiff Martin $1,200 per day as charter hire for the vessel.

79.     On or about May 17, 2010, Plaintiff Martin and BP entered into Master Charter Agreement No. 58423 for a 17 foot vessel owned by Plaintiff Martin.  BP agreed to pay Plaintiff Martin $1,200 per day as charter hire for the vessel.

80.     Prior to and after Plaintiff Martin and BP entered into Master Vessel Charter Agreements Nos. 58422 and 58423, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Martin, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.  Additional representations made by Defendants to Plaintiff Martin include, but are not limited to, the following:

a.     On or about May 17, 2010, at a community meeting attended by Plaintiff Martin in Mobile County, Alabama, employees and agents of the Corporate Defendants and Fictitious Defendants represented and warranted to Plaintiff Martin that he would be paid for every day his vessels were in the VOO Program, regardless of whether the vessels were actually deployed;

b.     After May 17, 2010, at a training meeting attended by Plaintiff Martin in Mobile County, Alabama, employees and agents of the Corporate

Defendants and Fictitious Defendants represented and warranted to Plaintiff Martin that he would be paid for every day his vessels were in the VOO Program, regardless of whether the vessels were deployed or not; and

   c. After May 17, 2010, at a training meeting attended by Plaintiff Martin in Mobile County, Alabama, employees and agents of the Corporate Defendants and Fictitious Defendants represented and warranted to Plaintiff Martin that his vessels would be repaired as a result of any damages incurred as a result of the VOO Program.

   81. Plaintiff Martin received an off-hire dispatch notification for his vessel some time after August 27, 2010.

   82. Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Martin has not been fully compensated for (a) time his vessels actually spent on the water during the VOO Program; (b) time his vessels spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessels.

### *Samuel Mason, Jr.*

   83. On or about May 13, 2010, Plaintiff Samuel Mason, Jr. and BP entered into Master Vessel Charter Agreement No. 56427 for a 20 foot vessel owned by Plaintiff Mason.  BP agreed to pay Plaintiff Mason $1,200 per day as charter hire for the vessel.

   84. Prior to and after Plaintiff Mason and BP entered into Master Vessel Charter Agreement No. 56427, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Mason,

among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program. Additional representations made by Defendants to Plaintiff Mason include, but are not limited to, the following:

a.     On or about May 13, 2010, at a community meeting attended by Plaintiff Mason in Mobile County, Alabama, employees and agents of the Corporate Defendants and Fictitious Defendants represented and warranted to Plaintiff Mason that he would be paid for every day his vessel was in the VOO Program.

85.     Plaintiff Mason received an off-hire dispatch notification for his vessel some time after September 29, 2010.

86.     Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Mason has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Zach Meadows*

87.     On or about May 24, 2010, Plaintiff Zach Meadows and BP entered into Master Vessel Charter Agreement No.60324 for a 20 foot vessel owned by Plaintiff Meadows. BP agreed to pay Plaintiff Meadows $1,200 per day as charter hire for the vessel.

88.     Prior to and after Plaintiff Meadows and BP entered into Master Vessel Charter Agreement No. 60324, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Meadows, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.  Additional representations made by Defendant to Plaintiff Meadows include, but are not limited to, the following:

a.     On or about May 24, 2010, at a community meeting attended by Plaintiff Meadows in Mobile County, Alabama, Defendant Joseph Lobo represented and warranted to Plaintiff Meadows that his vessel would be repaired and put back in the condition it was in upon hire.

89.     Plaintiff Meadows received an off-hire dispatch notification for his vessel some time after September 29, 2010.

90.     Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Meadows has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs of his vessel.

### *Master Mike, Inc.*

91.     On or about May 5, 2010, Plaintiff Master Mike, Inc. and BP entered into Master Vessel Charter Agreement No. 55122 for a 98 foot vessel owned by Plaintiff Master Mike.  BP agreed to pay Plaintiff Master Mike $3,000 per day as charter hire for the vessel.

39

92.    Prior to and after Plaintiff Master Mike and BP entered into Master Vessel Charter Agreement No. 55122, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Master Mike among other things, that it would be paid for standby time and that it would be fully reimbursed for any damage to its vessel that occurred while the vessel was in the VOO Program.   Additional representations made by Defendants to Plaintiff Master Mike include, but are not limited to, the following:

a.    On or about May 2, 2010, at a community meeting attended by Plaintiff Master Mike in Mobile County, Alabama, Defendant Jeff Johnson represented and warranted to Plaintiff Master Mike that it would be paid for every day its vessel was in the VOO Program;

b.    On or after May 7, 2010, employees and agents of the Corporate Defendants and Fictitious Defendants represented and warranted to Plaintiff Master Mike that it would be paid for every day its vessel was in the VOO program; and

c.    On or about May 29, 2010, at a meeting held in Mobile County, Alabama, employees and agents of the Corporate Defendants and Fictitious Defendants represented and warranted to Plaintiff Master Mike that it would be reimbursed for equipment purchased and expenses incurred as a result of work it was asked to perform while in the VOO Program.

93.    Plaintiff Master Mike received an off-hire dispatch notification for its vessel some time after August 18, 2010.

94.     Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Master Mike has not been fully compensated for (a) time its vessel actually spent on the water during the VOO Program; (b) time its vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of its vessel.

### *J.I.N., L.L.C.*

95.     On or about May 13, 2010, Plaintiff J.I.N., L.L.C. and BP entered into Master Vessel Charter Agreement No. 57257 for a 31 foot boat owned by Plaintiff J.I.N., L.L.C.  BP agreed to pay Plaintiff J.I.N. $1,500 per day as charter hire for the vessel.

96.     On or about May 13, 2010, Plaintiff J.I.N., L.L.C. and BP entered into Master Vessel Charter Agreement No. 57258 for a 23 foot boat owned by Plaintiff J.I.N., L.L.C.  BP agreed to pay Plaintiff J.I.N. $1,200 per day as charter hire for the vessel.

97.     Prior to and after Plaintiff J.I.N. and BP entered into Master Vessel Charter Agreements Nos. 57257 and 57258, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff J.I.N., among other things, that it would be paid for standby time and that it would be fully reimbursed for any damage to its vessels that occurred while the vessels were in the VOO Program.   Additional representations made by Defendants to Plaintiff J.I.N. include, but are not limited to, the following:

        a.     On or about May 12, 2010, at a community meeting attended by Plaintiff J.I.N. in Mobile County, Alabama, Defendant Ed Thompson represented

41

and warranted to Plaintiff J.I.N. that it would be paid for every day its vessels were in the VOO Program.

98.     Plaintiff J.I.N. received off-hire dispatch notifications for each of its vessels some time after August 21, 2010.

99.     Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff J.I.N. has not been fully compensated for (a) time its vessels actually spent on the water during the VOO Program; (b) time its vessels spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of its vessels.

### ***Andy Yarborough***

100.    Plaintiff Andy Yarborough and BP entered into Master Vessel Charter Agreement No. 60058 for a 34 foot vessel owned by Plaintiff Yarborough.  BP agreed to pay Plaintiff Yarborough $1,500 per day as charter hire for the vessel.

101.    Prior to and after Plaintiff Yarborough and BP entered into Master Vessel Charter Agreement No. 60058, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Yarborough, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.  Additional representations made by Defendants to Plaintiff Yarborough include, but are not limited to, the following:

a.      On or before July 2, 2010, at a community meeting attended by Plaintiff Yarborough in Mobile County, Alabama, employees and agents of the Corporate Defendants and Fictitious Defendants represented and warranted to

42

Plaintiff Yarborough that he would be paid for every day his vessel was in the VOO Program, regardless of whether his vessel was actually deployed.

102.   Plaintiff Yarborough received an off-hire dispatch notification for his vessel some time after August 21, 2010.

103.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Yarborough has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Fish Trap Charters, LLC*

104.   On or about May 5, 2010, Plaintiff Fish Trap Charters, LLC and BP entered into Master Vessel Charter Agreements Nos. 55037 and 55038 for 4 vessels owned by Plaintiff Fish Trap Charters, LLC: (1) a 34 foot vessel for which BP agreed to pay Plaintiff Fish Trap Charters, LLC $1,500 per day as charter hire for the vessel, (2) a 33 foot vessel for which BP agreed to pay Plaintiff Fish Trap Charters, LLC $1,500 per day as charter hire for the vessel, (3) a 31.6 foot vessel for which BP agreed to pay Plaintiff Fish Trap Charters, LLC $1,500 per day as charter hire for the vessel and (4) a 26 foot vessel for which BP agreed to pay Plaintiff Fish Trap Charters, LLC $1,200 per day as charter hire for the vessel.

105.   Prior to and after Plaintiff Fish Trap Charters, LLC and BP entered into Master Vessel Charter Agreements Nos. 55037 and 55038, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and

warranted to Plaintiff Fish Trap Charters, LLC, among other things, that it would be paid for standby time and that it would be fully reimbursed for any damage to its vessels that occurred while the vessels were in the VOO Program. Additional representations made by Defendants to Plaintiff Fish Trap Charters include, but are not limited to, the following:

a.      On or about May 5, 2010, at a community meeting attended by Plaintiff Fish Trap Charters, LLC in Baldwin County, Alabama, Defendant Ed Thompson represented and warranted to Plaintiff Fish Trap Charters, LLC that it would be paid for every day its vessels were in the VOO Program, regardless of whether the vessels were deployed; and

b.      On or about May 5, 2010, Defendant Ed Thompson represented and warranted to Plaintiff Fish Trap Charters, LLC that its vessels would be repaired and brought back to the same working condition as when initially brought into the program, plus 10%.

106.   Plaintiff Fish Trap Charters, LLC received an off-hire dispatch notification for only one of its vessels, and that was some time after August 27, 2010.

107.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Fish Trap Charters has not been fully compensated for (a) time its vessels actually spent on the water during the VOO Program; (b) time its vessels spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of its vessels.

44

### *Robert Anderson*

108.   Plaintiff Robert Anderson and BP entered into a Master Vessel Charter Agreement No. 57694 for a 31 foot vessel owned by Plaintiff Anderson.  BP agreed to pay Plaintiff Anderson $1,500 per day as charter hire for the vessel.

109.   On or about May 7, 2010, Plaintiff Robert Anderson and BP entered into Master Vessel Charter Agreement No. 55572 for a 22 foot vessel owned by Plaintiff Anderson.  BP agreed to pay Plaintiff Anderson $1,200 per day as charter hire for the vessel.

110.   Prior to and after Plaintiff Anderson and BP entered into a Master Vessel Charter Agreements Nos. 57694 and 55572, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Anderson, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO Program.

111.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Anderson has not been fully compensated for (a) time his vessels actually spent on the water during the VOO Program; (b) time his vessels spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessels.

### *Thomas J. Ard*

112.   On or about May 3, 2010, Plaintiff Thomas J. Ard entered into Master Vessel Charter Agreement No. 55023 for 2 vessels owned by Plaintiff Ard: (1) a 38 foot

vessel for which BP agreed to pay Plaintiff Ard $1,500 per day as charter hire for the vessel and (2) a 19 foot vessel for which BP agreed to pay Plaintiff Ard $1,200 per day as charter hire for the vessel.

113.   On or about May 7, 2010, Plaintiff Ard and BP entered into Master Vessel Charter Agreement No. 55031 for a 40 foot vessel owned by Plaintiff Ard for which BP agreed to pay Plaintiff Ard $1,500 per day as charter hire for the vessel.

114.   Prior to and after Plaintiff Ard and BP entered into Master Vessel Charter Agreements Nos. 55023 and 55031, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Ard, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO Program.

115.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Ard has not been fully compensated for (a) time his vessels actually spent on the water during the VOO Program; (b) time his vessels spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessels.

### *Blue Water Yacht Sales and Services, Inc.*

116.   Plaintiff Blue Water Yacht Sales and Services, Inc. and BP entered into Master Vessel Charter Agreement No. 60772 for a 30 foot vessel owned by Plaintiff Blue Water.  BP agreed to pay Plaintiff Blue Water $1,500 per day as charter hire for the vessel.

117.   Plaintiff Blue Water Yacht Sales and Services, Inc. and BP entered into Master Vessel Charter Agreement No. 60773 for an 18 foot vessel owned by Plaintiff Blue Water.  BP agreed to pay Plaintiff Blue Water $1,200 per day as charter hire for the vessel.

118.   Prior to and after Plaintiff Blue Water and BP entered into Master Vessel Charter Agreements Nos. 60772 and 60773, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Blue Water, among other things, that it would be paid for standby time and that it would be fully reimbursed for any damage to its vessels that occurred while the vessels were in the VOO Program.

119.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Blue Water has not been fully compensated for (a) time its vessels actually spent on the water during the VOO Program; (b) time its vessels spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of its vessels.

### *Richard Bosarge*

120.   On or about May 14, 2010, Plaintiff Bosarge and BP entered into Master Vessel Charter Agreement No. 57243 for a 19 foot vessel owned by Plaintiff Bosarge. BP agreed to pay Plaintiff Bosarge $1,200 per day as charter hire for the vessel.

121.   On or about June 10, 2010, Plaintiff Bosarge and BP entered into VOO Master Vessel Charter Agreement No. 60080 for a 19 foot boat owned by Plaintiff

Bosarge.  BP agreed to pay Plaintiff Bosarge $1,200 per day as charter hire for the Vessel.

122.   Prior to and after Plaintiff Bosarge and BP entered into Master Vessel Charter Agreements Nos. 57243 and 60080, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Bosarge, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO Program.

123.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Bosarge has not been fully compensated for (a) time his vessels actually spent on the water during the VOO Program; (b) time his vessels spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessels.

### *Quinn Breland*

124.   On or about May 10, 2010, Plaintiff Breland and BP entered into Master Vessel Charter Agreement No. 56238 for 4 vessels owned by Plaintiff Breland: (1) a 38 foot vessel for which BP agreed to pay Plaintiff Breland $1,500 per day as charter hire for the vessel, (2) a 24 foot vessel for which BP agreed to pay Plaintiff Breland $1,200 per day as charter hire for the vessel, (3) a 21 foot vessel for which BP agreed to pay Plaintiff Breland $1,200 per day as charter hire for the vessel and (4) a 17 foot vessel for which BP agreed to pay Plaintiff Breland $1,200 per day as charter hire for the vessel.

125.   Prior to and after Plaintiff Breland and BP entered into Master Vessel Charter Agreement No. 56238, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Breland, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO Program.

126.   Plaintiff Breland received an off-hire dispatch notification some time after August 18, 2010 and another off-hire dispatch notification some time after August 27, 2010.

127.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Breland has not been fully compensated for (a) time his vessels actually spent on the water during the VOO Program; (b) time his vessels spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessels.

### *Clarence L. Bryant*

128.   On or about May 14, 2010, Plaintiff Clarence L. Bryant and BP entered into Master Vessel Charter Agreement No. 56472 for a 22 foot vessel owned by Plaintiff Bryant.  BP agreed to pay Plaintiff Bryant $1,200 per day as charter hire for the vessel.

129.   Prior to and after Plaintiff Bryant and BP entered into Master Vessel Charter Agreement No. 56472, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Bryant, among other things, that he would be paid for standby time and that he would be fully

49

reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

130.   Plaintiff Bryant received an off-hire dispatch notification for his vessel some time after August 28, 2010.

131.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Bryant has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Captain Mike's Deep Sea Fishing, Inc.*

132.   Prior to June 1, 2010, Plaintiff Mike's Deep Sea Fishing, Inc. and BP entered into Master Vessel Charter Agreement No. 56251 for a 57 foot vessel owned by Plaintiff Mike's Deep Sea Fishing.  BP agreed to pay Plaintiff Mike's Deep Sea Fishing $2,000 per day as charter hire for the vessel.

133.   Prior to and after Plaintiff Captain Mike's Deep Sea Fishing and BP entered into Master Vessel Charter Agreement No. 56251, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Captain Mike's Deep Sea Fishing, among other things, that it would be paid for standby time and that it would be fully reimbursed for any damage to its vessel that occurred while the vessel was in the VOO Program.

134.   Plaintiff Captain Mike's Deep Sea Fishing received an off-hire dispatch notification for its vessel some time after September 29, 2010.

135.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Captain Mike's Deep Sea Fishing has not been fully compensated for (a) time its vessel actually spent on the water during the VOO Program; (b) time its vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of its vessel.

### *Emily Chambliss*

136.   On or about May 13, 2010, Plaintiff Emily Chambliss and BP entered into Master Vessel Charter Agreement No. 58799 for a 17 foot vessel owned by Plaintiff Emily Chambliss.  BP agreed to pay Plaintiff Emily Chambliss $1,200 per day as charter hire for the vessel.

137.   Prior to and after Plaintiff Emily Chambliss and BP entered into Master Vessel Charter Agreement No. 58799, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Emily Chambliss, among other things, that she would be paid for standby time and that she would be fully reimbursed for any damage to her vessel that occurred while the vessel was in the VOO Program.

138.   Plaintiff Emily Chambliss received an off-hire dispatch notification for her vessel some time after August 27, 2010.

139.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Emily Chambliss has not been fully compensated for (a) time her vessel actually spent on the water during the VOO Program; (b) time her vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses

51

incurred as a result of the VOO Program; and/or (d) repairs and decontamination of her vessel.

### *Jeff Chambliss*

140.   On or about May 8, 2010, Plaintiff Jeff Chambliss and BP entered into Master Vessel Charter Agreement No. 58800 for a 24 foot vessel owned by Plaintiff Jeff Chambliss.  BP agreed to pay Plaintiff Jeff Chambliss $1,200 per day as charter hire for the vessel.

141.   Prior to and after Plaintiff Jeff Chambliss and BP entered into Master Vessel Charter Agreement No. 58800, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff  Jeff Chambliss, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

142.   Plaintiff Jeff Chambliss received an off-hire dispatch notification for his vessel some time after August 27, 2010.

143.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Jeff Chambliss has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; and/or (c) reimbursable costs and expenses incurred as a result of the VOO Program.

### *Donald Jerome Christian*

144.   On or about May 19, 2010, Plaintiff Donald Jerome Christian and BP entered into Master Vessel Charter Agreement No. 58655 for a 25 foot vessel owned by

Plaintiff Christian.  BP agreed to pay Plaintiff Christian $1,200 per day as charter hire for the vessel.

145.   On or about May 19, 2010, Plaintiff Christian and BP entered into Master Vessel Charter Agreement No. 58656 for a 19 foot vessel owned by Plaintiff Christian. BP agreed to pay Plaintiff Christian $1,200 per day as charter hire for the vessel.

146.   On or about May 19, 2010, Plaintiff Christian and BP entered into Master Vessel Charter Agreement No. 58657 for a 20 foot vessel owned by Plaintiff Christian. BP agreed to pay Plaintiff Christian $1,200 per day as charter hire for the vessel.

147.   On or about May 19, 2010, Plaintiff Christian and BP entered into Master Vessel Charter Agreement No. 58658 for a 37 foot vessel owned by Plaintiff Christian. BP agreed to pay Plaintiff Christian $1,500 per day as charter hire for the vessel.

148.   Prior to and after Plaintiff Christian and BP entered into Master Vessel Charter Agreements Nos. 58655, 58656, 58657 and 58658, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Christian, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO Program.

149.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Christian has not been fully compensated for (a) time his vessels actually spent on the water during the VOO Program; (b) time his vessels spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessels.

53

### *Steven Cook*

150.    On or about May 10, 2010, Plaintiff Steven Cook and BP entered into Master Vessel Charter Agreement No. 55867 (formerly 58105.2) for a 20 foot vessel owned by Plaintiff Cook.  BP agreed to pay Plaintiff Cook $1,200 per day as charter hire for the vessel.

151.    Prior to and after Plaintiff Cook and BP entered into Master Vessel Charter Agreement No. 55867, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Cook, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program. Additional representations made by Defendants to Plaintiff Cook include, but are not limited to, the following:

a.    On or about May 10, 2010, at a community meeting attended by Plaintiff Cook, employees and agents of the Corporate Defendants and Fictitious Defendants represented and warranted to Plaintiff Cook that he would be paid for every day his vessel was in the VOO Program.

152.    Plaintiff Cook received an off-hire dispatch notification for his vessel some time after August 27, 2010.

153.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Cook has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Charles Crawford*

154.   Plaintiff Charles Crawford and BP entered into a Master Vessel Charter Agreement for 2 vessels owned by Plaintiff Crawford.   BP agreed to pay Plaintiff Crawford a set amount per day for each vessel as charter hire for the vessels.

155.   Prior to and after Plaintiff Crawford and BP entered into a Master Vessel Charter Agreement, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Crawford, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessel was in the VOO Program.

156.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Crawford has not been fully compensated for (a) time his vessels actually spent on the water during the VOO Program; (b) time his vessels spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessels.

### *Christopher Dean*

157.   Plaintiff Christopher Dean and BP entered into a Master Vessel Charter Agreement for a vessel owned by Plaintiff Dean.  BP agreed to pay Plaintiff Dean a set amount per day as charter hire for the vessel.

158.   Prior to and after Plaintiff Dean and BP entered into a Master Vessel Charter Agreement, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Dean, among other

things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

159.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Dean has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Edward M. Deupree, III*

160.   On or about June 29, 2010, Plaintiff Edward M. Deupree, III and BP entered into Master Vessel Charter Agreement No. 60813 for a 22 foot vessel owned by Plaintiff Deupree.  BP agreed to pay Plaintiff Deupree $1,200 per day as charter hire for the vessel.

161.   Prior to and after Plaintiff Deupree and BP entered into Master Vessel Charter Agreement No. 60813, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Deupree, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

162.   Plaintiff Deupree received an off-hire dispatch notification for his vessel some time after August 27, 2010.

163.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Deupree has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel

spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Cletes DiNero*

164.   In early May, 2010**,** Plaintiff Cletes DiNero and BP entered into Master Vessel Charter Agreement No. 57407 for 7 vessels owned by Plaintiff DiNero: (1) a 48 foot vessel for which BP agreed to pay Plaintiff DiNero $2,000 per day as charter hire, (2) a 26 foot vessel for which BP agreed to pay Plaintiff DiNero $1,200 per day as charter hire, (3) a 20 foot vessel for which BP agreed to pay Plaintiff DiNero $1,200 per day as charter hire, (4) three 17 foot vessels for which BP agreed to pay Plaintiff DiNero $1,200 per day for each vessel as charter hire (5) and a 14 foot vessel for which BP agreed to pay Plaintiff DiNero $1,200 per day as charter hire.

165.   Prior to and after Plaintiff DiNero and BP entered into Master Vessel Charter Agreement No. 57407, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff DiNero, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO Program.   Additional representations made by Defendants to Plaintiff DiNero include, but are not limited to, the following:

      a.   On a number of occasions after Plaintiff DiNero had entered into the Master Vessel Charter Agreement, Defendant Brandy Buxton represented and warranted to Plaintiff DiNero that he would be paid for every day his vessels were in the VOO Program.

57

166.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff DiNero has not been fully compensated for (a) time his vessels actually spent on the water during the VOO Program; (b) time his vessels spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessels.

### ***Gary Downs***

167.   Plaintiff Gary Downs and BP entered into a Master Vessel Charter Agreement for a vessel owned by Plaintiff Downs.  BP agreed to pay Plaintiff Downs a set amount per day as charter hire for the vessel.

168.   Prior to and after Plaintiff Downs and BP entered into a Master Vessel Charter Agreement, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Downs, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

169.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Down has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### ***Todd Drummond***

170.   Plaintiff Todd Drummond and BP entered into a Master Vessel Charter Agreement for a vessel owned by Plaintiff Drummond.   BP agreed to pay Plaintiff Drummond a set amount per day as charter hire for the vessel.

171.   Prior to and after Plaintiff Drummond and BP entered into a Master Vessel Charter Agreement, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Drummond, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

172.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Drummond has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### ***Daniel P. Eggers***

173.   On or about May 5, 2010, Plaintiff Daniel P. Eggers and BP entered into Master Vessel Charter Agreement No. 55096 for two vessels owned by Plaintiff Eggers: (1) a 19 foot vessel for which BP agreed to pay Plaintiff Eggers $1,200 per day as charter hire for the vessel and (2) a 13 foot vessel for which BP agreed to pay Plaintiff Eggers $1,200 per day as charter hire for the vessel.

174.   Prior to and after Plaintiff Eggeres and BP entered into Master Vessel Charter Agreement No. 55096, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Eggers, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO Program.

175.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Eggers has not been fully compensated for (a) time his vessels actually spent on the water during the VOO Program; (b) time his vessels spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessels.

### *Erica Lynn, Inc.*

176.   Plaintiff Erica Lynn, Inc. and BP entered into Master Vessel Charter Agreement No. 55566 for a 77 foot vessel owned by Plaintiff Erica Lynn, Inc.   BP agreed to pay Plaintiff Erica Lynn, Inc. $3,000 per day as charter hire for the vessel.

177.   Prior to and after Plaintiff Erica Lynn, Inc. and BP entered into Master Vessel Charter Agreement No. 55566, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Erica Lynn, Inc., among other things, that it would be paid for standby time and that it would be fully reimbursed for any damage to its vessel that occurred while the vessel was in the VOO Program.

178.    Plaintiff Erica Lynn, Inc. received an off-hire dispatch notification for its vessel some time after October 7, 2010.

179.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Erica Lynn, Inc. has not been fully compensated for (a) time its vessel actually spent on the water during the VOO Program; (b) time its vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of its vessel.

### *Peter Fill*

180.    Plaintiff Peter Fill and BP entered into a Master Vessel Charter Agreement for a vessel owned by Plaintiff Fill.  BP agreed to pay Plaintiff Fill a set amount per day as charter hire for the vessel.

181.    Prior to and after Plaintiff Fill and BP entered into a Master Vessel Charter Agreement, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Fill, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

182.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Fill has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Marlin D. Fillers*

183.   On or about May 17, 2010, Plaintiff Marlin D. Fillers and BP entered into Master Vessel Charter Agreement No. 57728 for two vessels owned by Plaintiff Marlin Fillers: (1) a 26 foot vessel for which BP agreed to pay Plaintiff Marlin Fillers $1,200 per day as charter hire for the vessel and (2) a 20 foot vessel for which BP agreed to pay Plaintiff Marlin Fillers $1,200 per day as charter hire for the vessel.

184.   Prior to and after Plaintiff Marlin Fillers and BP entered into Master Vessel Charter Agreement No. 57728, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Marlin Fillers, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO Program.

185.   Plaintiff Marlin Fillers received an off-hire dispatch notification for his vessels some time after August 18, 2010.

186.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Marlin Fillers has not been fully compensated for (a) time his vessels actually spent on the water during the VOO Program; (b) time his vessels spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessels.

### *Michael J. Fillers*

187.   On or about May 17, 2010, Plaintiff Michael J. Fillers and BP entered into Master Vessel Charter Agreement No. 57672 for two vessels owned by Plaintiff Michael

Fillers: (1) a 21 foot vessel for which BP agreed to pay Plaintiff Michael Fillers $1,200 per day as charter hire for the vessel and (2) a 16 foot vessel for which BP agreed to pay Plaintiff Michael Fillers $1,200 per day as charter hire for the vessel.

188.   Prior to and after Plaintiff Michael Fillers and BP entered into Master Vessel Charter Agreement No. 57672, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Michael Fillers, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO Program.

189.   Plaintiff Michael Fillers received an off-hire dispatch notification for his vessels some time after August 18, 2010.

190.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Michael Fillers has not been fully compensated for (a) time his vessels actually spent on the water during the VOO Program; (b) time his vessels spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessels.

### *David Forwood*

191.   Plaintiff David Forwood and BP entered into Master Vessel Charter Agreement No. 55601 for a vessel owned by Plaintiff Forwood.  BP agreed to pay Plaintiff Forwood a set amount per day as charter hire for the vessel.

192.   Prior to and after Plaintiff Forwood and BP entered into Master Vessel Charter Agreement No. 55601, the Corporate Defendants, some of the Individual

Defendants and the Fictitious Defendants represented and warranted to Plaintiff Forwood, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

193.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Forwood has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Stephen C. Foust*

194.   In May 2010, Plaintiff Stephen C. Foust and BP entered into Master Vessel Charter Agreement No. 55334 for a 57 foot vessel owned by Plaintiff Foust.  BP agreed to pay Plaintiff Foust $2,000 per day as charter hire for the vessel.

195.   Prior to and after Plaintiff Foust and BP entered into Master Vessel Charter Agreement No. 55334, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Foust, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

196.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Foust has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent

64

on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Chandelyn Gates*

197.   On or about June 15, 2010 Plaintiff Chandelyn Gates and BP entered into Master Vessel Charter Agreement No. 60475 for a 22 foot vessel owned by Plaintiff Gates.  BP agreed to pay Plaintiff Gates $1,200 per day as charter hire for the vessel.

198.   Prior to and after Plaintiff Gates and BP entered into Master Vessel Charter Agreement No. 60475, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Gates, among other things, that she would be paid for standby time and that she would be fully reimbursed for any damage to her vessel that occurred while the vessel was in the VOO Program.

199.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Gates has not been fully compensated for (a) time her vessel actually spent on the water during the VOO Program; (b) time her vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of her vessel.

### *Shane Greene*

200.   Plaintiff Shane Greene and BP entered into a Master Vessel Charter Agreement for a vessel owned by Plaintiff Greene.  BP agreed to pay Plaintiff Greene a set amount per day as charter hire for the vessel.

201.   Prior to and after Plaintiff Greene and BP entered into a Master Vessel Charter Agreement, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Greene, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

202.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Greene has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Steve Harrington*

203.   Plaintiff Steve Harrington and BP entered into a Master Vessel Charter Agreement for 2 boats owned by Plaintiff Harrington.   BP agreed to pay Plaintiff Harrington a set amount per day for each vessel as charter hire.

204.   Prior to and after Plaintiff Harrington and BP entered into a Master Vessel Charter Agreement, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Harrington, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO Program.

205.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Harrington has not been fully compensated for (a)

66

time his vessels actually spent on the water during the VOO Program; (b) time his vessels spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessels.

### ***Donnie Harris***

206.   On or about May 10, 2010, Plaintiff Donnie Harris and BP entered into Master Vessel Charter Agreement No. 56264 for 8 boats owned by Plaintiff Harris: (1) a 21 foot vessel for which BP agreed to pay Plaintiff Harris $1,200 per day as charter hire, (2) a 20 foot vessel for which BP agreed to pay Plaintiff Harris $1,200 per day as charter hire, (3) a 16 foot vessel for which BP agreed to pay Plaintiff Harris $1,200 per day as charter hire and (4) 5 other vessels for which BP agreed to pay Plaintiff Harris a set amount per day for each vessel as charter hire.

207.   Prior to and after Plaintiff Harris and BP entered into Master Vessel Charter Agreement No. 56264, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Harris, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO Program.

208.   Plaintiff Harris received an off-hire dispatch notification for one of his vessels some time after August 18, 2010, and received off-hire dispatch notifications for his remaining 7 vessels some time after August 27, 2010.

209.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Harris has not been fully compensated for (a) time

his vessels actually spent on the water during the VOO Program; (b) time his vessels spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessels.

### *Paul Hightower*

210.   On or about July 2, 2010, Plaintiff Paul Hightower and BP entered into Master Vessel Charter Agreement No.61047 for a 30 foot vessel owned by Plaintiff Hightower.  BP agreed to pay Plaintiff Hightower $1,500 per day as charter hire for the vessel.

211.   Prior to and after Plaintiff Hightower and BP entered into Master Vessel Charter Agreement No. 61047, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Hightower, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

212.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Hightower has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

68

### *Bobby Huff*

213.   Plaintiff Bobby Huff and BP entered into a Master Vessel Charter Agreement for a vessel owned by Plaintiff Huff.  BP agreed to pay Plaintiff Huff a set amount per day as charter hire for the vessel.

214.   Prior to and after Plaintiff Huff and BP entered into a Master Vessel Charter Agreement, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Huff, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

215.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Huff has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Dana James*

216.   Plaintiff Dana James and BP entered into Master Vessel Charter Agreement No. 57315 for a vessel owned by Plaintiff James.  BP agreed to pay Plaintiff James a set amount per day as charter hire for the vessel.

217.   Prior to and after Plaintiff James and BP entered into Master Vessel Charter Agreement No. 57315, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff James, among other things, that he would be paid for standby time and that he would be fully

69

reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

218.    Plaintiff James received an off-hire dispatch notification for his vessel some time after August 27, 2010.

219.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff James has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Laurie Jones*

220.    Plaintiff Laurie Jones and BP entered into a Master Vessel Charter Agreement for a vessel owned by Plaintiff Jones.  BP agreed to pay Plaintiff Jones a set amount per day as charter hire for the vessel.

221.    Prior to and after Plaintiff Jones and BP entered into a Master Vessel Charter Agreement, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Jones, among other things, that she would be paid for standby time and that she would be fully reimbursed for any damage to her vessel that occurred while the vessel was in the VOO Program.

222.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Jones has not been fully compensated for (a) time her vessel actually spent on the water during the VOO Program; (b) time her vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses

incurred as a result of the VOO Program; and/or (d) repairs and decontamination of her vessel.

### *Sarah Koptis*

223.   On or about May 13, 2010, Plaintiff Sarah Koptis and BP entered into Master Vessel Charter Agreement No. 57646 for a 43 foot vessel owned by Plaintiff Koptis.  BP agreed to pay Plaintiff Koptis $2,000 per day as charter hire for the vessel.

224.   Prior to and after Plaintiff Koptis and BP entered into Master Vessel Charter Agreement No. 57646, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Koptis, among other things, that she would be paid for standby time and that she would be fully reimbursed for any damage to her vessel that occurred while the vessel was in the VOO Program.

225.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Koptis has not been fully compensated for (a) time her vessel actually spent on the water during the VOO Program; (b) time her vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of her vessel.

### *David Krause*

226.   On or about May 10, 2010, Plaintiff David Krause and BP entered into Master Vessel Charter Agreement No. 55836 for three 23 foot vessels owned by Plaintiff Krause.  BP agreed to pay Plaintiff Krause $1,200 per day for each vessel as charter hire.

71

227.   Prior to and after Plaintiff Krause and BP entered into Master Vessel Charter Agreement No. 55836, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Krause, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO Program.

228.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Krause has not been fully compensated for (a) time his vessels actually spent on the water during the VOO Program; (b) time his vessels spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessels.

### *Patrick Kraver*

229.   Plaintiff Patrick Kraver and BP entered into a Master Vessel Charter Agreement for a vessel owned by Plaintiff Kraver.  BP agreed to pay Plaintiff Kraver a set amount per day as charter hire for the vessel.

230.   Prior to and after Plaintiff Kraver and BP entered into a Master Vessel Charter Agreement, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Kraver, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

231.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Kraver has not been fully compensated for (a) time

his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Bill Kreamer*

232.   Plaintiff Bill Kreamer and BP entered into Master Vessel Charter Agreement No. 55077 for a vessel owned by Plaintiff Kreamer.  BP agreed to pay Plaintiff Kreamer a set amount per day as charter hire for the vessel.

233.   Prior to and after Plaintiff Kreamer and BP entered into Master Vessel Charter Agreement No. 55077, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Kreamer, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

234.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Kreamer has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Robert Kritzmire*

235.   Plaintiff Robert Kritzmire and BP entered into a Master Vessel Charter Agreement for a vessel owned by Plaintiff Kritzsmire.   BP agreed to pay Plaintiff Kritzmire a set amount per day as charter hire for the vessel.

236.   Prior to and after Plaintiff Kritzmire and BP entered into a Master Vessel Charter Agreement, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Kritzmire, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

237.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Kritzmire has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Terry Lilley*

238.   Plaintiff Terry Lilley and BP entered into a Master Vessel Charter Agreement for a vessel owned by Plaintiff Lilley.   BP agreed to pay Plaintiff Lilley a set amount per day as charter hire for the vessel.

239.   Prior to and after Plaintiff Lilley and BP entered into a Master Vessel Charter Agreement, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Lilley, among other

things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

240.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Lilley has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Timothy Marine*

241.   In June 2010, Plaintiff Timothy Marine and BP entered into Master Vessel Charter Agreement No. 60602 for a 30 foot vessel owned by Plaintiff Marine.   BP agreed to pay Plaintiff Marine $1,500 per day as charter hire for the vessel.

242.   Prior to and after Plaintiff Marine and BP entered into Master Vessel Charter Agreement No. 60602, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Marine, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

243.   Plaintiff Marine received an off-hire dispatch notification for his vessel some time in October 2010.

244.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Marine has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses

incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *James B. McDonough, III*

245.   On or about May 20, 2010, Plaintiff James B. McDonough, III and BP entered into Master Vessel Charter Agreement No. 58737 for two vessels owned by Plaintiff McDonough a 28 foot vessel for which BP agreed to pay Plaintiff McDonough $1,200 per day as charter hire for the vessel and a 14 foot vessel for which BP agreed to pay Plaintiff McDonough $1,200 per day as charter hire for the vessel.

246.   Prior to and after Plaintiff McDonough and BP entered into Master Vessel Charter Agreement No. 58737, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff McDonough, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO Program.

247.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff McDonough has not been fully compensated for (a) time his vessels actually spent on the water during the VOO Program; (b) time his vessels spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessels.

### *Mary W. McLaughlin*

248.   On or about June 14, 2010, Plaintiff Mary W. McLaughlin and BP entered into Master Vessel Charter Agreement No. 60328 for a 31 foot vessel owned by Plaintiff

McLaughlin. BP agreed to pay Plaintiff McLaughlin $1,500 per day as charter hire for the vessel.

249. Prior to and after Plaintiff McLaughlin and BP entered into Master Vessel Charter Agreement No. 60328, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff McLaughlin, among other things, that she would be paid for standby time and that she would be fully reimbursed for any damage to her vessel that occurred while the vessel was in the VOO Program.

250. Plaintiff McLaughlin received off-hire dispatch notifications for her vessel some time after September 29, 2010.

251. Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff McLaughlin has not been fully compensated for (a) time her vessel actually spent on the water during the VOO Program; (b) time her vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of her vessel.

### *Brian McNab*

252. On or about May 12, 2010, Plaintiff McNab and BP entered into Master Vessel Charter Agreements Nos. 50266 and 57959 for two 20 foot vessels owned by Plaintiff McNab. BP agreed to pay Plaintiff McNab $1,200 per day for each vessel as charter hire.

253. Prior to and after Plaintiff McNab and BP entered into Master Vessel Charter Agreements Nos. 50266 and 57959, the Corporate Defendants, some of the

Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff McNab, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO Program.

254.    Plaintiff McNab received off-hire dispatch notifications for his vessels some time after August 18, 2010.

255.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff McNab has not been fully compensated for (a) time his vessels actually spent on the water during the VOO Program; (b) time his vessels spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessels.

### *Mike Miller*

256.    Plaintiff Mike Miller and BP entered into a Master Vessel Charter Agreement for a vessel owned by Plaintiff Miller.  BP agreed to pay Plaintiff Miller a set amount per day as charter hire for the vessel.

257.    Prior to and after Plaintiff Miller and BP entered into a Master Vessel Charter Agreement, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Miller, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

258.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Miller has not been fully compensated for (a) time his

vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Morris Marine, LLC*

259.   On or about May 5, 2010, Plaintiff Morris Marine, LLC and BP entered into Master Vessel Charter Agreement No. 55097 for 2 vessels owned by Plaintiff Morris Marine: (1) a 19 foot vessel for which BP agreed to pay Plaintiff Morris Marine $1,200 per day as charter hire for the vessel and (2) a 12 foot vessel for which BP agreed to pay Plaintiff Morris Marine $1,200 per day as charter hire for the vessel.

260.   On or about May 5, 2010, Plaintiff Morris Marine and BP entered into Master Vessel Charter Agreement No. 55954 for two vessels owned by Plaintiff Morris: (1) a 19 foot vessel for which BP agreed to pay Plaintiff Morris $1,200 per day as charter hire for the vessel and (2) a 23 foot vessel for which BP agreed to pay Plaintiff Morris $1,200 per day as charter hire for the vessel.

261.   Prior to and after Plaintiff Morris Marine and BP entered into Master Vessel Charter Agreement Nos. 55097 and 55954, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Morris Marine, among other things, that it would be paid for standby time and that it would be fully reimbursed for any damage to its vessels that occurred while the vessels were in the VOO Program.

262.   Plaintiff Morris Marine received an off-hire dispatch notification for his vessels some time after August 18, 2010.

263.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Morris Marine has not been fully compensated for (a) time its vessels actually spent on the water during the VOO Program; (b) time its vessels spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of its vessels.

### *Farrell Morris*

264.    Plaintiff Farrell Morris and BP entered into a Master Vessel Charter Agreement for a vessel owned by Plaintiff Farrell Morris.  BP agreed to pay Plaintiff Farrell Morris a set amount per day as charter hire for the vessel.

265.    Prior to and after Plaintiff Farrell Morris and BP entered into a Master Vessel Charter Agreement, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Farrell Morris, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

266.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Farrell Morris has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### _Matthew Morris_

267.   In late May or early June, 2010, Plaintiff Matthew Morris and BP entered into Master Vessel Charter Agreement No. 60123 for 2 vessels owned by Plaintiff Matthew Morris: (1) a 67 foot vessel for which BP agreed to pay Plaintiff Matthew Morris $3,000 per day as charter hire for the vessel and (2) an 18 foot vessel for which BP agreed to pay Plaintiff Matthew Morris $1,200 per day as charter hire for the vessel.

268.   Prior to and after Plaintiff Matthew Morris and BP entered into Master Vessel Charter Agreement No. 60123, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Matthew Morris, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO Program.

269.   Plaintiff Matthew Morris received an off-hire dispatch notification for his vessels some time after August 18, 2010.

270.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Matthew Morris has not been fully compensated for (a) time his vessels actually spent on the water during the VOO Program; (b) time his vessels spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessels.

### *Thomas Myers*

271.   On or about June 22, 2010, Plaintiff Thomas Myers and BP entered into Master Vessel Charter Agreement No. 60585 for a 21 foot vessel owned by Plaintiff Myers.  BP agreed to pay Plaintiff Morris $1,200 per day as charter hire for the vessel.

272.   Prior to and after Plaintiff Myers and BP entered into Master Vessel Charter Agreement No. 60585, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Myers, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

273.   Plaintiff Myers received an off-hire dispatch notification for his vessel on or about June 18, 2010.

274.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Myers has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Joseph L. Nash*

275.   On or about May 3, 2010, Plaintiff Joseph L. Nash and BP entered into Master Vessel Charter Agreement No. 55014 for 2 boats owned by Plaintiff Nash: (1) a 19 foot vessel for which BP agreed to pay Plaintiff Nash $1,200 per day as charter hire

and (2) a second vessel for which BP agreed to pay Plaintiff Nash a set amount per day as charter hire for the vessel.

276.    Prior to and after Plaintiff Nash and BP entered into Master Vessel Charter Agreement No. 55014, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Nash, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO Program.

277.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Nash has not been fully compensated for (a) time his vessels actually spent on the water during the VOO Program; (b) time his vessels spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessels.

### *James Noel*

278.    On or about May 12, 2010, Plaintiff James Noel and BP entered into Master Vessel Charter Agreement No. 57610 for 2 vessels owned by Plaintiff Noel: (1) a 61 foot vessel for which BP agreed to pay $2,000 per day as a charter hire and (2) a 17 foot vessel for which BP agreed to pay $1,200 per day as a charter hire.

279.    Prior to and after Plaintiff Noel and BP entered into Master Vessel Charter Agreement No. 57610, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Noel, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessels were in the VOO Program.

280.   Plaintiff Noel received an off-hire dispatch notification for his vessel some time after August 28, 2010.

281.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Noel has not been fully compensated for (a) time his vessels actually spent on the water during the VOO Program; (b) time his vessels spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessels.

### *James Nowell*

282.   Plaintiff James Nowell and BP entered into a Master Vessel Charter Agreement for a vessel owned by Plaintiff Nowell.  BP agreed to pay Plaintiff Nowell a set amount per day as charter hire for the vessel.

283.   Prior to and after Plaintiff Nowell and BP entered into a Master Vessel Charter Agreement, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Nowell, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

284.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Nowell has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

84

### *Marcus Oliver*

285.   On or about May 5, 2010, Plaintiff Oliver and BP entered into Master Vessel Charter Agreement No. 56246 for a 25 foot vessel owned by Plaintiff Oliver.  BP agreed to pay Plaintiff Oliver $1,200 per day as charter hire for the vessel.

286.   Prior to and after Plaintiff Oliver and BP entered into Master Vessel Charter Agreement No. 56246, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Oliver, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

287.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Oliver has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Christopher Pfeiffer*

288.   On or about June 8, 2010, Plaintiff Christopher Pfeiffer and BP entered into Master Vessel Charter Agreement No. 60122 for a 68 foot vessel owned by Plaintiff Pfeiffer.  BP agreed to pay Plaintiff Pfeiffer $3,000 per day as charter hire for the vessel.

289.   Prior to and after Plaintiff Pfeiffer and BP entered into Master Vessel Charter Agreement No. 60122, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff

Pfeiffer, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

290.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Pfeiffer has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Tommy Price*

291.   Plaintiff Tommy Price and BP entered into a Master Vessel Charter Agreement for a vessel owned by Plaintiff Price.  BP agreed to pay Plaintiff Price a set amount per day as charter hire for the vessel.

292.   Prior to and after Plaintiff Price and BP entered into a Master Vessel Charter Agreement, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Price, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

293.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Price has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Lynn Pridgen*

294.   On or about May 9, 2010, Plaintiff Pridgen and BP entered into Master Vessel Charter Agreement No. 50137 for a 21.8 foot vessel owned by Plaintiff Pridgen. BP agreed to pay Plaintiff Pridgen $1,200 per day as charter hire for the vessel.

295.   Prior to and after Plaintiff Pridgen and BP entered into Master Vessel Charter Agreement No. 50137, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Pridgen, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

296.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Pridgen has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Rob Reese*

297.   On or about May 11, 2010, Plaintiff Rob Reese and BP entered into Master Vessel Charter Agreement No. 55868 for a vessel owned by Plaintiff Reese.  BP agreed to pay Plaintiff Reese $1,200 per day as charter hire for the vessel.

298.   Prior to and after Plaintiff Reese and BP entered into Master Vessel Charter Agreement No. 55868, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Reese,

87

among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

299.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Reese has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Jake Richards*

300.   On or about May 7, 2010, Plaintiff Jake Richards and BP entered into Master Vessel Charter Agreement No. 55152 for a 21 foot vessel owned by Plaintiff Richards.  BP agreed to pay Plaintiff Richards $1,200 per day as charter hire for the vessel.

301.   Prior to and after Plaintiff Richards and BP entered into Master Vessel Charter Agreement No. 55152, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Richards, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

302.   Plaintiff Richards received an off-hire dispatch notification for his vessel some time after August 27, 2010.

303.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Richards has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### ***Michael Salley***

304.   On or about May 3, 2010, Plaintiff Salley and BP entered into Master Vessel Charter Agreement No. 55026 for a 38 foot vessel owned by Plaintiff Salley.  BP agreed to pay Plaintiff Salley $1,500 per day as charter hire for the vessel.

305.   On or about May 22, 2010, Plaintiff Salley and BP entered into Master Vessel Charter Agreement No.59315 for a 21 foot boat owned by Plaintiff Salley.  BP agreed to pay Plaintiff Salley $1,200 per day as charter hire for the vessel.

306.   Prior to and after Plaintiff Salley and BP entered into Master Vessel Charter Agreements Nos. 55026 and 59315, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Salley, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

307.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Salley has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses

incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Barry Scott*

308.   Plaintiff Barry Scott and BP entered into a Master Vessel Charter Agreement for a vessel owned by Plaintiff Barry Scott.  BP agreed to pay Plaintiff Barry Scott a set amount per day as charter hire for the vessel.

309.   Prior to and after Plaintiff Barry Scott and BP entered into a Master Vessel Charter Agreement, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Barry Scott, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

310.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Barry Scott has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Chris Shutt*

311.   On or about May 12, 2010, Plaintiff Chris Shutt and BP entered into Master Vessel Charter Agreement No. 56119 for a 53 foot vessel owned by Plaintiff Shutt.  BP agreed to pay Plaintiff Shutt $2,000 per day as charter hire for the vessel.

90

312.    Prior to and after Plaintiff Shutt and BP entered into Master Vessel Charter Agreement No. 56119, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Shutt, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

313.    Plaintiff Shutt received an off-hire dispatch notification for his vessel some time after August 27, 2010.

314.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants Plaintiff Shutt has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and (d) repairs and/or decontamination of his vessel.

### *Paul D. Smith*

315.    On or about May 13, 2010, Plaintiff Paul D. Smith and BP entered into Master Vessel Charter Agreement No. 57613 for a 22 foot vessel owned by Plaintiff Paul Smith.  BP agreed to pay Plaintiff Paul Smith $1,200 per day as charter hire for the vessel.

316.    Prior to and after Plaintiff Paul Smith and BP entered into Master Vessel Charter Agreement No. 57613, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Paul Smith, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

317.   Plaintiff Paul Smith received an off-hire dispatch notification for his vessel some time after August 27, 2010.

318.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Paul Smith has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Thomas H. Smith*

319.   On or about July 7, 2010, Plaintiff Thomas H. Smith and BP entered into Master Vessel Charter Agreement No. 61004 for a 34 foot vessel owned by Plaintiff Thomas Smith.  BP agreed to pay Plaintiff Thomas Smith $1,500 per day as charter hire for the vessel.

320.   Prior to and after Plaintiff Thomas Smith and BP entered into Master Vessel Charter Agreement No. 61004, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Thomas Smith, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

321.   Plaintiff Thomas Smith received an off-hire dispatch notification for his vessel some time after August 27, 2010.

322.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Thomas Smith has not been fully compensated for

92

(a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Malissa Sommerville*

323.   On or about May 15, 2010, Plaintiff Malissa Sommerville and BP entered into Master Vessel Charter Agreement No. 57419 for a 22 foot vessel owned by Plaintiff Sommerville.  BP agreed to pay Plaintiff Sommerville $1,200 per day as charter hire for the vessel.

324.   Prior to and after Plaintiff Sommerville and BP entered into Master Vessel Charter Agreement No. 57419, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Sommerville, among other things, that she would be paid for standby time and that she would be fully reimbursed for any damage to her vessel that occurred while the vessel was in the VOO Program.

325.   Plaintiff Sommerville received an off-hire dispatch notification for her vessel some time after August 18, 2010.

326.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Sommerville has not been fully compensated for (a) time her vessel actually spent on the water during the VOO Program; (b) time her vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of her vessel.

### *Southland, L.L.C.*

327.   On or about May 5, 2010, Plaintiff Southland, L.L.C. and BP entered into Master Vessel Charter Agreement No. 56254 for 6 vessels owned by Plaintiff Southland: (1) three 26 foot boats for which BP agreed to pay Plaintiff Southland $1,200 per day for each vessel as charter hire, (2) two 24 foot boats for which BP agreed to pay Plaintiff Southland $1,200 per day for each vessel as charter hire and (3) a 20 foot boat for which BP agreed to pay Plaintiff Southland $1,200 per day as charter hire.

328.   Prior to and after Plaintiff Southland and BP entered into Master Vessel Charter Agreement No. 56254, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Southland, among other things, that it would be paid for standby time and that it would be fully reimbursed for any damage to its vessels that occurred while the vessels were in the VOO Program.

329.   Plaintiff Southland received an off-hire dispatch notification for its vessels on or about August 30, 2010.

330.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Southland has not been fully compensated for (a) time its vessels actually spent on the water during the VOO Program; (b) time its vessels spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of its vessels.

### *Lyle Stephens*

331.   In early May, 2010, Plaintiff Lyle Stephens and BP entered into Master Vessel Charter Agreement No. 50076 for a 43 foot vessel owned by Plaintiff Stephens. BP agreed to pay Plaintiff Stephens $1,500 per day as charter hire for the vessel.

332.   Prior to and after Plaintiff Stephens and BP entered into Master Vessel Charter Agreement No. 50076, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Stephens, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

333.   Plaintiff Stephens received an off-hire dispatch notification for his vessel some time after August 27, 2010.

334.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Stephens has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Allen Still*

335.   Plaintiff Allen Still and BP entered into a Master Vessel Charter Agreement for a vessel owned by Plaintiff Still.  BP agreed to pay Plaintiff Still a set amount per day as charter hire for the vessel.

336.   Prior to and after Plaintiff Still and BP entered into a Master Vessel Charter Agreement, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Still, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

337.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Still has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *David A. Stiller*

338.   On or about May 9, 2010, Plaintiff David A. Stiller and BP entered into Master Vessel Charter Agreement No. 55229 for 2 vessels owned by Plaintiff Stiller: (1) a 45.6 foot vessel for which BP agreed to pay Plaintiff Stiller $2,000 per day as charter hire and (2) a 34 foot vessel for which BP agreed to pay Plaintiff Stiller $1,500 per day as charter hire for the vessel.

339.   Prior to and after Plaintiff Stiller and BP entered into Master Vessel Charter Agreement No. 55229, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Stiller, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

96

340.    Plaintiff Stiller received an off-hire dispatch notification for his vessel some time after August 27, 2010.

341.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Still has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Jon Swenson*

342.    On or about May 15, 2010, Plaintiff Jon Swenson and BP entered into Master Vessel Charter Agreement No. 57951 for a 46 foot vessel owned by Plaintiff Swenson.  BP agreed to pay Plaintiff Still 2,000 per day as charter hire for the vessel.

343.    Prior to and after Plaintiff Swenson and BP entered into Master Vessel Charter Agreement No. 57951, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Swenson, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

344.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Swenson has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *The Morris Agency, LLC*

345.   On or about May 5, 2010**,** Plaintiff The Morris Agency, LLC and BP entered into Master Vessel Charter Agreement No. 55955 for 2 vessels owned by Plaintiff The Morris Agency: (1) a 21 foot vessel for which BP agreed to pay Plaintiff The Morris Agency $1,200 per day as charter hire for the vessel and (2) a 15 foot vessel for which BP agreed to pay Plaintiff The Morris Agency $1,200 per day as charter hire for the vessel.

346.   On or about May 19, 2010**,** Plaintiff The Morris Agency and BP entered into Master Vessel Charter Agreement No. 58736 for 2 vessels owned by Plaintiff The Morris Agency: (1) a 52 foot vessel for which BP agreed to pay Plaintiff The Morris Agency $2,000 per day as charter hire for the vessel and (2) a 14 foot vessel for which BP agreed to pay Plaintiff The Morris Agency $1,200 per day as charter hire for the vessel.

347.   On or about May 19, 2010**,** Plaintiff The Morris Agency and BP entered into Master Vessel Charter Agreement No. 60124 for 2 vessels owned by Plaintiff The Morris Agency: (1) a 23 foot vessel for which BP agreed to pay Plaintiff The Morris Agency $1,200 per day as charter hire for the vessel and (2) an 18 foot vessel for which BP agreed to pay Plaintiff The Morris Agency $1,200 per day as charter hire for the vessel.

348.   Prior to and after Plaintiff The Morris Agency and BP entered into Master Vessel Charter Agreements Nos. 55955, 58736 and 60124, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff The Morris Agency, among other things, that it would be paid for

standby time and that it would be fully reimbursed for any damage to its vessels that occurred while the vessel was in the VOO Program.

349.    Plaintiff The Morris Agency received an off-hire dispatch notification for its vessels some time after August 27, 2010.

350.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff The Morris Agency has not been fully compensated for (a) time its vessels actually spent on the water during the VOO Program; (b) time its vessels spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of its vessels.

### *Trawler Becky Lyn, Inc.*

351.    In May 2010, Plaintiff Trawler Becky Lyn, Inc. and BP entered into Master Vessel Charter Agreement No. 56141 for a vessel owned by Plaintiff Becky Lyn.  BP agreed to pay Plaintiff Trawler Becky Lyn $3,000 per day as charter hire for the vessel.

352.    Prior to and after Plaintiff Trawler Becky Lyn and BP entered into Master Vessel Charter Agreement No. 56141, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Trawler Becky Lyn, among other things, that it would be paid for standby time and that it would be fully reimbursed for any damage to its vessel that occurred while the vessel was in the VOO Program.

353.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Trawler Becky Lyn has not been fully compensated for (a) time its vessel actually spent on the water during the VOO Program; (b) time its

vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of its vessel.

### *Trawler Lady Catherine, Inc.*

354.    On or about May 10, 2010, Plaintiff Trawler Lady Catherine, Inc. and BP entered into Master Vessel Charter Agreement No. 56266 for an 86 foot vessel owned by Plaintiff Trawler Lady Catherine.  BP agreed to pay Plaintiff Trawler Lady Catherine $3,000 per day as charter hire for the vessel.

355.    Prior to and after Plaintiff Trawler Lady Catherine and BP entered into Master Vessel Charter Agreement No. 56266, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Trawler Lady Catherine, among other things, that it would be paid for standby time and that it would be fully reimbursed for any damage to its vessel that occurred while the vessel was in the VOO Program.

356.    Plaintiff Trawler Lady Catherine received an off-hire dispatch notification for its vessel some time after August 27, 2010.

357.    Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Trawler Lady Catherine has not been fully compensated for (a) time its vessel actually spent on the water during the VOO Program; (b) time its vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of its vessel.

### *Trawler Little Brothers, Inc.*

358.   On or about May 10, 2010, Plaintiff Trawler Little Brothers, Inc. and BP entered into Master Vessel Charter Agreement No. 56267 for an 86 foot vessel owned by Plaintiff Trawler Little Brothers.  BP agreed to pay Plaintiff Trawler Little Brothers $3,000 per day as charter hire for the vessel.

359.   Prior to and after Plaintiff Trawler Little Brothers and BP entered into Master Vessel Charter Agreement No. 56267, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Trawler Little Brothers, among other things, that it would be paid for standby time and that it would be fully reimbursed for any damage to its vessel that occurred while the vessel was in the VOO Program.

360.   Plaintiff Trawler Little Brothers received an off-hire dispatch notification for its vessel on or about August 27, 2010.

361.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Trawler Little Brothers has not been fully compensated for (a) time its vessel actually spent on the water during the VOO Program; (b) time its vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of its vessel.

### *Hans Van Aller, IV*

362.   Plaintiff Hans Van Aller, IV and BP entered into a Master Vessel Charter Agreement for a vessel owned by Plaintiff Van Aller.  BP agreed to pay Plaintiff Van Aller a set amount per day as charter hire for the vessel.

363.   Prior to and after Plaintiff Van Aller and BP entered into a Master Vessel Charter Agreement, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Van Aller, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

364.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Van Aller has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and (d) repairs and decontamination of his vessel.

### Matthew B. Walker, Jr.

365.   On or about May 17, 2010, Plaintiff Matthew B. Walker, Jr. and BP entered into Master Vessel Charter Agreement No. 57960 for a 30 foot vessel owned by Plaintiff Walker.  BP agreed to pay Plaintiff Walker $1,500 per day as charter hire for the vessel.

366.   Prior to and after Plaintiff Walker and BP entered into Master Vessel Charter Agreement No. 57960, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Walker, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

367.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Walker has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### *Peter Wall*

368.   On or about May 14, 2010, Plaintiff Peter Wall and BP entered into Master Vessel Charter Agreement No. 57210 for a 31 foot vessel owned by Plaintiff Wall.  BP agreed to pay Plaintiff Wall $1,500 per day as charter hire for the vessel.

369.   Prior to and after Plaintiff Wall and BP entered into Master Vessel Charter Agreement No. 57210, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Wall, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

370.   Plaintiff Wall received an off-hire dispatch notification for his vessel some time after August 18, 2010.

371.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Wall has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### Bryan Watts, Jr.

372.   On or about May 4, 2010, Plaintiff Bryan Watts, Jr. and BP entered into Master Vessel Charter Agreement No. 55075 (formerly 55353) for a 43 foot vessel owned by Plaintiff Watts.  BP agreed to pay Plaintiff Watts $1,500 per day as charter hire for the vessel.

373.   Prior to and after Plaintiff Watts and BP entered into Master Vessel Charter Agreement No. 55075 (formerly 55353), the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Watts, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

374.   Plaintiff Watts never received an off-hire dispatch notification for his vessel.

375.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Watts has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### Billy J. Wilkerson

376.   Plaintiff Billy J. Wilkerson and BP entered into a Master Vessel Charter Agreement for 2 vessels owned by Plaintiff Billy Wilkerson for which BP agreed to pay

Plaintiff Billy Wilkerson a set amount per day for each vessel as charter hire for the vessel.

377.   Prior to and after Plaintiff Billy Wilkerson and BP entered into a Master Vessel Charter Agreement, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Billy Wilkerson, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessels that occurred while the vessel was in the VOO Program.

378.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Billy Wilkerson has not been fully compensated for (a) time his vessels actually spent on the water during the VOO Program; (b) time his vessels spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessels.

### *Tessa Wilkerson*

379.   Plaintiff Tessa Wilkerson and BP entered into a Master Vessel Charter Agreement for a vessel owned by Plaintiff Tessa Wilkerson.  BP agreed to pay Plaintiff Tessa Wilkerson a set amount per day as charter hire for the vessel.

380.   Prior to and after Plaintiff Tessa Wilkerson and BP entered into a Master Vessel Charter Agreement, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Tessa Wilkerson, among other things, that she would be paid for standby time and that she

would be fully reimbursed for any damage to her vessel that occurred while the vessel was in the VOO Program.

381.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Tessa Wilkerson has not been fully compensated for (a) time her vessel spent on standby during the VOO Program and (b) reimbursable costs and expenses incurred as a result of the VOO Program.

### *Wonderland Express, Inc.*

382.   Plaintiff Wonderland Express, Inc. and BP entered into Master Vessel Charter Agreement No. 58131 for a vessel owned by Plaintiff Wonderland Express.  BP agreed to pay Plaintiff Wonderland Express a set amount per day as charter hire for the vessel.

383.   Prior to and after Plaintiff Wonderland Express and BP entered into Master Vessel Charter Agreement No. 58131, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Wonderland Express, among other things, that it would be paid for standby time and that it would be fully reimbursed for any damage to its vessel that occurred while the vessel was in the VOO Program.

384.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Wonderland Express has not been fully compensated for (a) time its vessel actually spent on the water during the VOO Program; (b) time its vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of its vessel.

106

### ***Barry Wyatt***

385.   Plaintiff Barry Wyatt and BP entered into Master Vessel Charter Agreement No. 58130 for a vessel owned by Plaintiff Wyatt.  BP agreed to pay Plaintiff Wyatt a set amount per day as charter hire for the vessel.

386.   Prior to and after Plaintiff Wyatt and BP entered into Master Vessel Charter Agreement No. 58130, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Wyatt, among other things, that he would be paid for standby time and that he would be fully reimbursed for any damage to his vessel that occurred while the vessel was in the VOO Program.

387.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Wyatt has not been fully compensated for (a) time his vessel actually spent on the water during the VOO Program; (b) time his vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of his vessel.

### ***Yarings of Texas, Inc.***

388.   Plaintiff Yarings of Texas, Inc. and BP entered into a Master Vessel Charter Agreement for a vessel owned by Plaintiff Yarings of Texas.  BP agreed to pay Plaintiff Yarings of Texas a set amount per day as charter hire for the vessel.

389.   Prior to and after Plaintiff Yarings of Texas and BP entered into a Master Vessel Charter Agreement, the Corporate Defendants, some of the Individual Defendants and the Fictitious Defendants represented and warranted to Plaintiff Yarings

107

of Texas, among other things, that it would be paid for standby time and that it would be fully reimbursed for any damage to its vessel that occurred while the vessel was in the VOO Program.

390.   Contrary to the representations and warranties of the Corporate, Individual and Fictitious Defendants, Plaintiff Yarings of Texas has not been fully compensated for (a) time its vessel actually spent on the water during the VOO Program; (b) time its vessel spent on standby during the VOO Program; (c) reimbursable costs and expenses incurred as a result of the VOO Program; and/or (d) repairs and decontamination of its vessel.

### COUNT ONE
### Breach of Contract

391.   Plaintiffs incorporate by reference the preceding allegations of this complaint as if fully set forth herein.

392.   BP has breached the terms of the uniform Master Vessel Charter Agreements.   In particular, BP has refused and failed to pay Plaintiffs for services, equipment, materials, repairs and decontaminations, as required by each of the Plaintiffs' Master Vessel Charter Agreements entered into with BP.

WHEREFORE, Plaintiffs demand judgment against Defendant BP America Production for compensatory damages, plus interest, costs and all other relief that is appropriate and just.

### COUNT TWO
### Fraudulent Misrepresentation

393.   Plaintiffs incorporate by reference the preceding allegations of this complaint as if fully set forth herein.

394.   The Corporate Defendants, Individual Defendants and Fictitious Defendants 1-100 made false representations of material facts to Plaintiffs regarding the VOO Program as set forth above.

395.   Plaintiffs relied on the Corporate Defendants, Individual Defendants and Fictitious Defendants 1-100's false representations of material facts regarding the VOO Program.

396.   Plaintiffs' reliance on the Corporate Defendants, the Individual Defendants and Fictitious Defendants 1-100's false representations of material facts regarding the VOO Program was reasonable under the circumstances.

397.   Plaintiffs have been damaged as the proximate result of their reliance on the Corporate Defendants, the Individual Defendants and Fictitious Defendants 1-100's false representations of material facts regarding the VOO Program.

WHEREFORE, Plaintiffs demand judgment against the Corporate Defendants, the Individual Defendants and Fictitious Defendants 1-100 for compensatory damages and punitive damages, plus interest, costs and all other relief that is appropriate and just.

### COUNT THREE
### Fraudulent Suppression

398.   Plaintiffs incorporate by reference the preceding allegations of this complaint as if fully set forth herein.

399.   The Corporate Defendants, the Individual Defendants and Fictitious Defendants 1-100 had a duty to disclose to Plaintiffs all material facts regarding the VOO Program.

400.   The Corporate Defendants, the Individual Defendants and Fictitious Defendants 1-100 concealed material facts from Plaintiffs regarding the VOO Program.

401.   As the result of the Corporate Defendants, the Individual Defendants and Fictitious Defendants 1-100's concealment of material facts from Plaintiffs regarding the VOO Program, Plaintiffs were induced to sign up for and continue to participate in the VOO Program when they could have engaged in other activities and/or opportunities.

402.   Plaintiffs have been damaged as proximate result of the Corporate Defendants, the Individual Defendants and Fictitious Defendants 1-100's concealment of material facts regarding the VOO Program.

WHEREFORE, Plaintiffs demand judgment against the Corporate Defendants, the Individual Defendants and Fictitious Defendants 1-100 for compensatory damages and punitive damages, plus interest, costs and all other relief that is appropriate and just.

### COUNT FOUR
### Conspiracy

403.   Plaintiffs incorporate by reference the preceding allegations of this complaint as if fully set forth herein.

404.   The Corporate Defendants, the Individual Defendants and the Fictitious Defendants 1-100 have engaged in an illegal and unlawful conspiracy to defraud Plaintiffs, to induce Plaintiffs' participation in the VOO Program and to underpay Plaintiffs for services, equipment, materials, repairs and decontaminations related to Plaintiffs' participation in the VOO program.

110

405.   The acts of the Corporate Defendants, the Individual Defendants and the Fictitious Defendants described above constitute the independent wrong of civil conspiracy under the laws of the State of Alabama.

406.   Plaintiffs have been damaged as the result of the Corporate Defendants, the Individual Defendants and Fictitious Defendants 1-100's illegal and unlawful conspiracy.

WHEREFORE, Plaintiffs demand judgment against the Corporate Defendants, the Individual Defendants and Fictitious Defendants 1-100 for compensatory damages and punitive damages, plus interest, costs and all other relief that is appropriate and just.

**PLAINTIFFS DEMAND A JURY TRIAL**

*/s/ George W. Finkbohner, III*
GEORGE W. FINKBOHNER, III  (FIN011)
gwf@cunninghambounds.com
WILLIAM E. BONNER  (BON028)
web@cunninghambounds.com
Cunningham Bounds, LLC
Post Office Box 66705
Mobile, Alabama  36660
251-471-6191
251-479-1031 (fax)


*/s/ David A. Bagwell*
DAVID A. BAGWELL  (BAG003)
david@bagwellesq.com
Post Office Box 2126
Fairhope, Alabama  36533
251-928-2970
251-928-6597 (fax)

Attorneys for Plaintiffs

111

**PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL AS FOLLOWS:**

**BP AMERICA PRODUCTION COMPANY**
**c/o CT CORPORATION, REGISTERED AGENT**
**2 NORTH JACKSON STREET, SUITE 605**
**MONTGOMERY, AL  36104**

**PARSONS CORPORATION**
**c/o CT CORPORATION, REGISTERED AGENT**
**818 WEST 7TH STREET**
**LOS ANGELES, CA  90017**

**DANOS & CUROLE STAFFING, L.L.C.**
**c/o CT CORPORATION, REGISTERED AGENT**
**2 NORTH JACKSON STREET, SUITE 605**
**MONTGOMERY, AL  36104**

**JASON ZIGLAR**
**2517 MAGNOLIA GRANDE COURT**
**MOBILE, AL  36618-4825**

**DENNIS BERG**
**6448 CEDAR BEND COURT, APARTMENT B**
**MOBILE, AL  36608**

**DANNY BLACK**
**6630 HICKORY HILL DRIVE**
**SEMMES, AL  36575**

**MICHAEL ALLEN**
**16055 SPACE CENTER BOULEVARD, SUITE 725**
**HOUSTON, TX  77062**

**MICHAEL ENGLISH**
**16055 SPACE CENTER BOULEVARD, SUITE 725**
**HOUSTON, TX  77062**

**BRANDY BUXTON**
**305 NORTH CONCEPTION STREET, APARTMENT 3**
**MOBILE, AL  36603**

**JUSTIN NASH**
**1944 MEANDER CIRCLE**
**ANCHORAGE, AK  99516-7312**

**ED THOMPSON**
**501 WESTLAKE PARK BOULEVARD**
**HOUSTON, TX  77079**

**JOSEPH LOBO**
**501 WESTLAKE PARK BOULEVARD**
**HOUSTON, TX  77079**

**PHIL PAYNE**
**7577 EAST OAKLAWN ROAD**
**BILOXI, MS  39532**

**DEVON DOE**
**16055 SPACE CENTER BOULEVARD, SUITE 725**
**HOUSTON, TX  77062**

**MICHAEL EPPS**
**16055 SPACE CENTER BOULEVARD, SUITE 725**
**HOUSTON, TX  77062**

**TRUDY ROE**
**13083 HIGHWAY 308**
**LAROSE, LA  70373**

**JEFF JOHNSON**
**501 WESTLAKE PARK BOULEVARD**
**HOUSTON, TX  77079**

**DARRYL GONZALES**
**16055 SPACE CENTER BOULEVARD, SUITE 725**
**HOUSTON, TX  77062**

**HENRY DE LA GARZA**
**5300 MEMORIAL DRIVE, SUITE 260**
**HOUSTON, TX  77009**